[Crim. No. 23648. Dec. 6, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIE LEE HILL, Defendant and Respondent.

492

## COUNSEL

John K. Van de Kamp, Attorney General, Robert R. Granucci, Ann K. Jensen and Maria J. Fonseca, Deputy Attorneys General, for Plaintiff and Appellant.

Sheldon Portman, Public Defender, and Barbara B. Fargo, Deputy Public Defender, for Defendant and Respondent.

Wilbur F. Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and John Hamilton Scott, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**MOSK, J.**—The People appeal from an order of the Santa Clara Superior Court dismissing multiple felony counts against defendant Hill, a state prison inmate, on the ground that he had been denied his federal and state constitutional rights to speedy trial. The People contend this ruling is erroneous because, in seeking to prove that the delay in bringing him to trial prejudiced his ability to defend himself, defendant relied on the faded memory of prosecution witnesses. We conclude that in ruling on a motion alleging denial of speedy trial rights a court may consider the effect that the delay has had on the memory of all witnesses, including those to be produced by the prosecution.

On June 4, 1981, Marjorie L. was raped, robbed and burglarized; on July 21 of that same year, Rosemary A. was raped, robbed and burglarized; and on August 11, Anne B. was robbed and burglarized. These crimes were committed in Santa Clara County.

Defendant Hill was arrested on September 10 in nearby San Mateo County for rape, robbery and burglary committed in that county. On September 23, while the latter charges were pending, Santa Clara authorities filed a criminal complaint charging him with the crimes involving Rosemary A. and Marjorie L.; on November 9, they filed another complaint charging him with the crimes against Anne B. At some point undisclosed by the record, Santa Clara authorities notified San Mateo of the Santa Clara charges and asked that defendant be held on those charges following the completion of proceedings in San Mateo.

Defendant was tried and convicted of the charges against him in San Mateo; on March 26, 1982, he was sentenced to state prison for a term of 25 years. On April 25, while in prison, he wrote to the Santa Clara District Attorney pursuant to Penal Code section 1381 (hereinafter section 1381) demanding that he be tried on the Santa Clara charges.

Section 1381 provides that "Whenever a defendant has been convicted, in any court of this state, . . . and has been sentenced to and has entered upon a term of imprisonment in a state prison . . . and at the time of the entry upon such term of imprisonment . . . there is pending, in any court of this state, any other indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced, the district attorney of the county in which such matters are pending shall bring the same defendant to trial or for sentencing within 90 days after such person shall have delivered to said district attorney written notice of the place of his imprisonment . . . and his desire to be brought to trial . . . . In the event

that the defendant is not brought to trial or for sentencing within the 90 days as herein provided the court in which such charge or sentencing is pending must, on motion . . . of the defendant . . . dismiss such action."

The district attorney received defendant's section 1381 demand on April 29. Within a week he obtained an order to produce defendant that was duly forwarded to the Department of Corrections. In response, the department erroneously informed the district attorney that defendant was unavailable because he was in Los Angeles awaiting court proceedings; in fact he was at all times available to be transported to Santa Clara. Because of this error, defendant was not transported to Santa Clara as ordered.

Not until the statutory 90-day period had expired was a new order to transport him sought. On or about August 6, defendant sent a second letter to the district attorney demanding a hearing or dismissal of the charges. Coincidentally, on August 6 the district attorney obtained a new order to transport defendant to Santa Clara. In due course defendant was brought there and, on August 27, a preliminary hearing was held on the complaint involving Rosemary A. and Marjorie L.; another preliminary hearing was held on September 8, this time on the complaint involving Anne B. Defendant was held to answer after both hearings. An information was filed after the first hearing and amended on September 20 to reflect the result of the second hearing. Defendant was thus eventually charged with raping Rosemary A. and Marjorie L. and with robbing and burglarizing all three women. The use of a firearm was alleged in connection with the counts involving Marjorie L.; prior convictions of armed robbery, escape and second degree burglary were also alleged.

Defendant pleaded not guilty to the charges and refused to waive time. In early October 1982 he filed a motion to dismiss on the ground that he had been denied his statutory right to speedy trial under section 1381. On October 25, this motion was granted and the information was dismissed.

Penal Code section 1387 permits felony charges once dismissed on statutory speedy trial grounds to be refiled, and the district attorney did so on November 3 on all counts. On December 28, defendant again moved to dismiss, this time asserting his federal and state constitutional rights to a speedy trial. The matter was heard on January 10, 1983, and at the conclusion of the hearing the trial court ruled it was "satisfied the defendant has met his burden of proof in each and every respect as to the motion to dismiss. The length of delay is substantial. The reason for the delay is primarily negligence on the part of the State, not the—defendant has at all times timely asserted his right and has demonstrated, in my opinion, satisfactorily. There's prejudice that has occurred to him and all of [defendant's]

arguments relating to prejudice [are] most persuasive. The motion will, therefore, be granted."[1]

The Sixth Amendment to the United States Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." Similarly, article I, section 15, of the California Constitution declares that "The defendant in a criminal cause has the right to a speedy public trial . . . ." Although the trial court did not distinguish between the two distinct constitutional rights in making its ruling, we rely on state authority. Federal precedents cited herein are merely illustrative and do not compel the result we reach. (*Michigan* v. *Long* (1983) 463 U.S. 1032 [71 L.Ed.2d 1201, 103 S.Ct. 3469].)

We have endeavored in the past to point out that the right to a speedy trial granted under the California Constitution is independent of the right to a speedy trial required under the United States Constitution. But these differences are of little importance here because the only issue is whether defendant was prejudiced by the delay in bringing him to trial: prejudice is relevant under either the federal or the state standard.

■ To determine whether the federal constitutional right to a speedy trial has been violated, the United States Supreme Court has developed an ad hoc balancing test in which four factors are considered: the length of the delay, the reason for the delay, the defendant's assertion of his right to be brought to trial, and prejudice caused by the delay. (*Barker* v. *Wingo* (1972) 407 U.S. 514, 530 [33 L.Ed.2d 101, 117, 92 S.Ct. 2182].) No one factor, including prejudice, is considered "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." (*Id.* at p. 533 [33 L.Ed.2d at p. 118].) Rather, the weight accorded to each factor depends on the circumstances of the case. ■ ■ ■■ Prejudice has been deemed more important under the state standard, however, for this court weighs the prejudicial effect of delay against any justification for it. (*Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 740 [91 Cal.Rptr. 578, 478 P.2d 10].)[2]

■ Before considering the prejudice issue we pause to note that the evidence presented on the other factors relevant under one or the other

---

[1]Prior to ruling on the motion to dismiss for denial of speedy trial, the court granted defendant's motion under Penal Code section 995 to set aside the count charging him with rape of Marjorie L. The People have not sought review of this ruling.

[2]In *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 437 [121 Cal.Rptr. 457, 535 P.2d 321], a majority of this court held that even after a criminal charge has been once dismissed for violation of a defendant's statutory right to speedy trial, such a charge may be refiled unless the defendant proves actual prejudice. Here the trial court found that defendant had proved actual prejudice.

constitutional standard seems to weigh in favor of defendant. ■ ■ ■
■ ■ The total delay from the time that a criminal complaint was initially
lodged against him in Santa Clara to the time that the district attorney refiled
the complaint amounts to more than 13 months.[3] Some of that delay is
excused because defendant was on trial in San Mateo. But the only excuse
for the remainder of the delay is official negligence. Admittedly the district
attorney is not at fault, but another branch of the state government, the
Department of Corrections, clearly erred.

■ Negligent delay in bringing a defendant to trial, while not deemed
as onerous as deliberate delay, is still weighed against the People because
it is the duty of the state to bring a defendant promptly to trial. (*Barker,
supra,* 407 U.S., at p. 531 [33 L.Ed.2d at p. 117].) An imprisoned defend-
ant's only duty is to object to prolonged detention without trial and to move
for dismissal once the statutory period has expired. ■ Here defendant
timely asserted his right to trial beginning with his demand letter of April
25, 1982, and, by his count, on 11 separate occasions since then. It is of
no solace to this defendant that the error causing his trial to be delayed is
traceable to the Department of Corrections rather than to the district attor-
ney; the result to him was identical. In *Sykes* v. *Superior Court* (1973) 9
Cal.3d 83, 94 [106 Cal.Rptr. 786, 507 P.2d 90], we held that the Attorney
General's failure to inform the district attorney that the defendant had ob-
tained a writ of habeas corpus did not excuse the district attorney's failure
to rearraign; we explained, "The risk of clerical error or neglect on the
part of those charged with official action must rest with the People, not the
defendant in a criminal action."

Thus the evidence discloses a period of over six months of unexcused
delay from defendant's first demand letter to the date the charges were
refiled. While such delay is of serious concern, it appears the most telling
portion of the evidence presented to the trial court concerned prejudice.

---

[3]The state constitutional right to speedy trial attaches when a criminal complaint has been
filed. (*People* v. *Hannon* (1977) 19 Cal.3d 588, 608 [138 Cal.Rptr. 885, 564 P.2d 1203].)
However, it is not until "either a formal indictment or information or else the actual re-
straints imposed by arrest and holding to answer a criminal charge" that the federal consti-
tutional right to speedy trial is engaged. (*United States* v. *Marion* (1971) 404 U.S. 307, 320
[30 L.Ed.2d 468, 478, 92 S.Ct. 455].) We have concluded that the Supreme Court meant
in *Marion* that the filing of a complaint does not of itself cause the federal speedy trial right
to attach. (*Hannon, supra,* at pp. 605-606.) Amicus curiae Public Defender of Los Angeles
County asks us to decide that defendant became an "accused" under federal standards either
when Santa Clara officials requested that San Mateo officials detain him or when a warrant
was issued for his arrest subsequent to the filing of the complaint. We decline this invitation,
because the particular day on which the federal right attached is not at issue. The People do
not contest that the federal right attached sometime before the period of unexcused delay,
and in any event the point is moot because the trial court ruled on state as well as federal
grounds and we rely entirely on state grounds.

The prosecution apparently intended to base its case principally on the eyewitness testimony of the three victims.[4] Defendant stressed that the memories of two of these women have faded with time. Marjorie L. was able to identify defendant at a lineup conducted at the San Mateo County jail within a few months of the crime, but by the time of the preliminary hearing in August 1982 she had "mentally blocked" much of her memory on the subject. When asked if she had any doubts as to her in-court identification of defendant, she stammered, hesitated, and then said that "He looks like the same man except [that he has grown a] . . . beard." At that same hearing, when asked about aspects of the perpetrator's physical appearance, she responded many times that she could not recall. Likewise, Anne B.'s memory has developed significant gaps. In September 1981 she selected defendant's photograph from a group of six photographs. But now she cannot recall whether or not the police officer who showed them to her told her that the perpetrator's photograph was among them. And when asked to participate in a lineup conducted in September 1982, she circled two numbers on the lineup card, that of the defendant and another person, writing in the margin that "it was difficult to make a positive identification after so much time had passed."

The People object to the defendant's reliance on the fading memory of these two victims, arguing that any deterioration in their memories redounded to defendant's benefit because it weakened the prosecution's case. Yet to contend that a faded memory aids the defendant is to assume defendant's guilt; if he is innocent, obviously he would prefer witnesses who can forthrightly so testify.

Ordinarily when a defendant claims that delay has affected a witness's memory, he is referring to a defense witness. But we can see no reason why a defendant may not seek to prove that the fading memory of a prosecution witness has also made a fair trial impossible. Here, virtually the only evidence against defendant was the eyewitness testimony of the victims, and his only defense was mistaken identification. With sharper memories, the victims might have excluded him as the person who had assaulted them. As it is, however, the two women can make tentative in-court identifications of defendant, but their memories are apparently too uncertain to permit adequate cross-examination on the particulars of the person who attacked them.[5]

---

[4]The People also intended to present evidence that a diamond ring stolen from Anne B. was pawned by someone using defendant's driver's license. The pawnshop owner, however, was unable to identify defendant in court as the man who pawned the ring.

[5]On appeal the People for the first time maintain that prejudice has not been shown as to certain counts. For example, they object that the memory of Rosemary A. was not brought into question by defendant. In the context of suppression hearings we have refused to allow

■ Prejudice is a factual question to be determined by the trial court. (*People* v. *Cave* (1978) 81 Cal.App.3d 957, 965 [147 Cal.Rptr. 371].) ■ We concede the facts are not overwhelming in either direction, but the factual conflict was to be won or lost at the trial level. ■ Substantial evidence supports the court's findings, and under standard appellate practice we will not reweigh it. (*People* v. *Mitchell* (1972) 8 Cal.3d 164, 167 [104 Cal.Rptr. 348, 501 P.2d 916].)

The order is affirmed.

Bird, C. J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**LUCAS, J.**—I respectfully dissent. The majority correctly explains that, on the facts of this case, "the only issue is whether defendant was prejudiced by the delay in bringing him to trial" because the memories of the *prosecution* witnesses have faded. (*Ante,* p. 496.) The parties have located no California cases and our research discloses no cases in any jurisdiction where the fading memories of prosecution witnesses have been held to cause actual prejudice to a defendant. If defendant in fact was prejudiced, he would have a speedy trial claim. I dissent, however, because the overwhelming evidence indicates that defendant was not prejudiced, but was benefitted by the delay.

Marjorie L. was raped, robbed and burglarized on June 4, 1981, and Anne B. was robbed and burglarized on August 11, 1981. In September 1981, Marjorie identified defendant from a lineup, and Anne selected defendant's picture from a group of six photographs. By September 1982, however, neither woman was sure of her identification. The only logical conclusion to draw is that had the trial been held earlier, the victims would have been more certain defendant was the man who attacked them.

How was defendant prejudiced by this delay? The majority explains that defendant was deprived of the opportunity to elicit potentially exonerating

---

the People to present a new theory on appeal because "the defendant, being entitled to assume that the only purported justification . . . is that advanced by the prosecutor, has no reason to cross-examine prosecution witnesses and adduce evidence of his own to rebut the theory argued for the first time in the appellate court." (*People* v. *Sirhan* (1972) 7 Cal.3d 710, 736 [102 Cal.Rptr. 385, 497 P.2d 1121].) Defendant speculates that the People failed to object because their theory of the case was that the same man was the perpetrator in all three incidents; therefore, when defendant established that two of the victims would be of no help in exonerating him, he showed that his defense to all the charges had been impaired. We need not join defendant in this speculation; we need only observe that if the People had raised this issue at the hearing, defendant would have had an opportunity to question the memory of Rosemary A.

testimony. (*Ante,* p. 497.) Fortunately for defendant, however, he probably no longer has any need to elicit exonerating testimony: evidently the victims now admit they are no longer certain defendant is the man who attacked them. Furthermore, even assuming defendant's scope of impeachment of the victims is diminished by the delay, such minor limitation is far outweighed by the huge advantage defendant had gained. He would have faced a trial in which the victims positively identified him; now he faces a trial in which the victims are unsure.

Yet the majority turns its collective back on the facts and purports to rely on the presumption of innocence, stating: "[T]o contend that a faded memory aids the defendant is to assume defendant's guilt; if he is innocent, obviously he would prefer witnesses who can forthrightly so testify." (*Ante,* p. 498.) The argument does not withstand analysis. Certainly we must presume defendant's innocence. But we cannot presume, in the face of strong evidence to the contrary, that the victims' eyewitness testimony would have been exculpatory, regardless of defendant's preference for such testimony.

The victims' positive identification of defendant in September 1981 strongly suggests the victims' testimony close to that date would have inculpated defendant. Because their memories have faded, we cannot, of course, be absolutely certain. Because we lack absolute certainty, the majority invokes the presumption of innocence to presume conclusively, despite all indications to the contrary, that the victims' testimony would have been exculpatory.

When the facts strongly indicate what the lost evidence would have been, the presumption of innocence should not be used to absolve the court from judging whether the loss of evidence prejudiced the defendant.

Of course any defendant is innocent until proven guilty. But the majority not only assumes defendant's innocence, it assumes defendant already had been *proven* innocent. At this stage of the case, defendant has not been proven innocent or guilty. The People should have the opportunity to prove defendant guilty beyond a reasonable doubt despite the weaker case they now possess.

The majority correctly states that prejudice is a factual question to be determined by the trial court. Unlike the majority, however, I find no substantial evidence supporting the trial court's finding of prejudice. On the

contrary, it is the People who have been prejudiced by the delay and the defendant who has gained at their expense.

I would reverse the order of dismissal.

On January 24, 1985, the opinions were modified to read as printed above.