[No. A041273. First Dist., Div. Four. Dec. 27, 1988.]

CINDY L. ADAMSON et al., Plaintiffs and Appellants, v.
DEPARTMENT OF SOCIAL SERVICES, Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Sedgwick, Detert, Moran & Arnold and Nicholas W. Heldt for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Stephanie Wald, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**CHANNELL, J.**—After respondent state Department of Social Services revoked the license of appellant Daisy Hill Children's Center, Inc., to operate a child day care center, Daisy Hill and appellant Cindy L. Adamson

petitioned for a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) The petition was denied. Adamson and Daisy Hill appeal, contending that (1) the department lacked jurisdiction to revoke Adamson's license; (2) the trial court's finding that a child had been molested on the premises of the child care center was not supported by substantial evidence; (3) the department could not revoke the license on the basis of evidence of child molestation occurring off the premises of the child care center; (4) evidence of these off-site incidents should not have been admitted; and (5) the license revocation was motivated by Adamson's marriage to an alleged child molester, in violation of her constitutional right to marry. We affirm the judgment.

## I. FACTS

In 1982, respondent state Department of Social Services issued a license to appellant Cindy Adamson to operate a Redwood City child day care center. Adamson and her husband Harry were officers of appellant Daisy Hill Children's Center, Inc. (Daisy Hill). Harry attended the center almost daily.[1] In 1985, Adamson's license was renewed through August 1988. When the department discovered that it should have issued its initial license to Daisy Hill rather than Adamson, it asked Adamson to submit a new application for a corporate license. Before she did so, the department issued a license to the Daisy Hill corporation that was valid through August 1988.

In 1985, the department became suspicious that Harry might be a child molester. It was suggested that he stay away from the child care center during business hours. For the most part, Harry abided by this suggestion. Adamson offered to enter into an agreement barring Harry from the premises, but this offer was never accepted.

In February 1987,[2] the department filed an accusation seeking to revoke Daisy Hill's license. (See former Health & Saf. Code, § 1596.885, subd. (c).)[3] It also issued an order for temporary suspension of the license pending hearing, based on a finding that conduct inimical to the health, welfare and safety of the children and the public had occurred. Adamson was directed to cease operating Daisy Hill. In April, a hearing was conducted before an administrative law judge. (See § 1596.887; Gov. Code, §§ 11500-11528.) The judge heard evidence of Harry's molestations of four girls—one at the child care center and three at other locations. Harry was never convicted of any criminal offense, but the judge determined that molestations had occurred over a 10-year period. The judge also determined that Adamson knew of some of this conduct and gave Harry her tacit approval of it. The judge found that Adamson was more concerned about the fate of her mar-

---

[1] Harry was an officer of Daisy Hill until January 1987.
[2] All subsequent dates refer to the 1987 calendar year.
[3] All statutory references are to the Health and Safety Code, unless otherwise indicated.

riage and her license than about the harm done to these molested children. The judge found that Adamson's individual license had been terminated as a matter of law when the corporate license had issued and proposed that the Daisy Hill license be revoked; the following month, the department did so.

In September, Adamson and Daisy Hill petitioned for a writ of administrative mandate directing the department to set aside its decision to revoke the license. The trial court issued an alternative writ. After hearing, the court used its independent judgment,[4] discharged the alternative writ, and denied the peremptory writ. (Code Civ. Proc., § 1094.5, subd. (c).) In addition to issuing its own findings, the trial court adopted the findings of the administrative law judge.

## II. JURISDICTION*

. . . . . . . . . . . . . . . . . . . .

## III. EVIDENTIARY ISSUES

### A. *On-site Incident*

 Adamson and Daisy Hill contend that the trial court's finding that a child had been molested at the child care center was not supported by substantial evidence.[5] The trial court found that Harry had molested a four-year-old girl by placing or attempting to place his penis in her mouth. This incident occured at Daisy Hill. When her mother withdrew the girl from the center, Adamson did not inquire about this decision, nor did she exhibit any concern for the child's welfare when the girl accused Harry of molesting her. The court specifically found that inadequate supervision resulted in the child's molestation.

 As a preliminary matter, Adamson and Daisy Hill challenge the child's competency to testify. The girl was five years old when she gave her

---

[4] The trial court used its independent judgment to determine whether the administrative law judge's decision was proper. (See Code Civ. Proc., § 1094.5, subd. (c).) As such, we review the trial court's findings, rather than the administrative law judge's decision, to determine whether those findings are supported by substantial evidence. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308-309 [196 P.2d 20]; see Cal. Administrative Mandamus (Cont.Ed.Bar 1966) §§ 15.24-15.26.) As with ordinary civil appeals, this court must construe all conflicting evidence and make all inferences in favor of the trial court decision. (*Moran* v. *Board of Medical Examiners, supra,* at p. 308.)

* See footnote *ante,* page 14.

[5] In their reply brief, Adamson and Daisy Hill also contend that hearsay evidence was improperly admitted on this issue. As it is unfair to raise issues for the first time on appeal in a reply brief, we will not address them. (*Smith* v. *Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 329, fn. 5 [248 Cal.Rptr. 704].)

videotaped testimony. The trial court found that the child was competent to testify.

As a general rule, every person is qualified to be a witness, regardless of age. (Evid. Code, § 700; see 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1053, p. 1000.) One is disqualified as a witness in two circumstances—if he or she is incapable of expressing himself or herself concerning the matter so as to be understood; or if he or she is incapable of understanding the witness's duty to tell the truth. (Evid. Code, § 701, subd. (a).) ■ The party challenging a witness's qualification has the burden of proving disqualification. (*Id.*, § 405, Comment; see 2 Witkin, Cal. Evidence, *supra,* § 1052, pp. 999-1000.) Once the trial court determines the competency of a witness, this decision will not be disturbed on appeal in the absence of a clear abuse of discretion. (*People* v. *Willard* (1983) 155 Cal.App.3d 237, 239 [202 Cal.Rptr. 100].)

■ We have reviewed the child's testimony. Parts of it were inherently incredible—a fact that the trial court noted when it found her competent to be a witness. However, the fact that a very young witness makes inconsistent or exaggerated statements does not indicate an inability to perceive, recollect, and communicate or an inability to understand the duty to tell the truth. (See *People* v. *Willard, supra,* 155 Cal.App.3d at p. 240.) The child's competency depends on these factors alone; questions about whether aspects of her testimony were believable are questions of credibility for the trier of fact. They are not relevant to the issue of her competency to testify. (See *People* v. *Hall* (1984) 157 Cal.App.3d 538, 545 [223 Cal.Rptr. 267]; *People* v. *Willard, supra,* at p. 240.) The trial court did not abuse its discretion by permitting this child to testify.

■ Adamson and Daisy Hill also challenge the sufficiency of the evidence of the trial court's finding that this child was molested while under their care. ■ When findings are attacked for insufficiency of evidence, the power of the appellate court begins and ends with a determination of whether there is any substantial evidence to support them. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn from them. (*Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757], disapproved on another point in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2 [44 Cal.Rptr. 767, 402 P.2d 839]; *Bravo* v. *Buelow* (1985) 168 Cal.App.3d 208, 211 [214 Cal.Rptr. 615].) ■ Adamson and Daisy Hill attack the credibility of the witness, but, on appeal, they may not do so. (*Ibid.*) Considering the entire record on appeal and indulging in the presumptions that we must make, we are satisfied that there was substantial evidence to support the trial court's finding that Harry molested this child.

B. *Off-site Incidents*

 Adamson and Daisy Hill contend that the department was not authorized to revoke the license on the basis of three accusations of child molestation that did not occur at the Daisy Hill child care center. They contend that there was no evidence of misconduct occurring " 'in the operation or maintenance' " of the child care center. (Former § 1596.885, subd. (c).)[6]

In 1987, the challenged statute was amended to delete the reference to conduct occurring "in the operation or maintenance" of the child care center. (Compare Stats. 1986, ch. 1016, § 9, p. 3514 and Stats. 1984, ch. 1615, § 9, p. 5749.) We have already found that there is sufficient evidence to support the finding that one child was molested while under Adamson's supervision. (See pt. A, *ante*.) It could be argued that this evidence, standing alone, justifies revocation of the license, making discussion of this issue unnecessary. (See former § 1596.885, subd. (c).) However, we will address the issue on the merits. We begin by summarizing the evidence of each of the three off-site molestations.

The first witness was a 27-year-old woman who had been the Adamsons' foster child for more than 8 years. Beginning when she was thirteen, Harry began massaging her breasts and penetrating her vagina with his finger; these incidents occurred on a daily basis for three and a half years. When the girl was approximately 16, Harry placed his penis in the child's mouth. Adamson initially denied knowing of these incidents, but later admitted that she believed that they had occurred. She told officials that she did not want to jeopardize her marriage or her license.

The second witness was a 20-year-old girl. For three years, beginning at age fourteen, Harry regularly fondled her breasts and kissed her. These incidents occurred about twice a month when the child spent the night at the Adamson house. Harry also molested the girl during at least three overnight trips with her. Both of the Adamsons warned the girl against disclosing Harry's conduct.

The third victim was a girl whom Harry molested when she was only two years old. This child and her mother lived in the Adamson home and attended the child care center. Her mother testified that when she left the girl alone with Harry, he grabbed the child's vaginal area. Although the child cried out, Adamson, who was nearby, did not investigate. Both

---

[6] Former section 1596.885 authorized the department to revoke a license for "(c) Conduct *in the operation or maintenance,* or both the operation and maintenance, of a child day care facility which is inimical to the health, morals, welfare, or safety of either an individual in or receiving services from the facility or the people of this state." (Stats. 1984, ch. 1615, § 9, p. 5749, italics added.)

Adamson and Harry denied that the incident occurred. The mother and child left the Adamson home and Daisy Hill. At least one investigator found little or no merit to this complaint. While the trial court acknowledged that the evidence of this incident was not as strong as that of others, it found the matter was "convincingly established."

The trial court interpreted subdivision (c) of former section 1596.885 as the department had long construed it—that it applied regardless of whether the incidents occurred on or off the premises of the child care center. ■ Under California law, interpretations of statutory provisions by state administrative agencies are entitled to great weight when construing those provisions. Generally, courts will not depart from the agency's construction unless it is clearly erroneous or unauthorized. (*Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 579 [225 Cal.Rptr. 717].) ■ The department's construction of the statute to include within its scope conduct that occurs outside of the facility but that has an impact within the child care center is consistent with our reading of subdivision (c) of former section 1596.885. The purpose of the statute is apparent from its language—to protect the health, morals, welfare, or safety of children who are at child care centers. (Former § 1596.885, subd. (c) [Stats. 1984, ch. 1615, § 9, p. 5749]; see *Lopez* v. *McMahon* (1988) 205 Cal.App.3d 1510, 1516 [253 Cal.Rptr. 321].) Consistent with this purpose, we construe the former statute to permit the department to revoke a license if any conduct that threatens children occurs, whether it occurs on-site or off-, as long as that conduct jeopardizes children at the facility. ■ To interpret the statute otherwise would defeat the purpose of the legislation, a violation of the cardinal rule of statutory construction. (See *People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) Harry's practice of child molestation and Adamson's inability or failure to control him are behavior patterns that follow these two whether or not they are at the Daisy Hill facility. Certainly, Adamson's inability to deal with Harry's problem—in fact, her inability to admit that he has a problem—make her a poor candidate to supervise children—the very people that Harry has victimized.

■ Adamson and Daisy Hill also contend that evidence of these three accusations should have been stricken as irrelevant and prejudicial, and because of the suppression of exculpatory evidence by the department. They contend that this evidence prejudiced them with regard to the finding that a child was molested on the premises of the child care center.[7] (See pt. A, *ante*.)

The trial court found the evidence relevant and found no evidence of suppression of exculpatory evidence. Based on our interpretation of former

---

[7]Adamson and Daisy Hill do not challenge the sufficiency of evidence supporting the findings that these three girls were molested.

section 1596.885, we are satisfied that the evidence of off-site incidents of Harry's molestation is relevant—that it has some tendency to prove or disprove this disputed fact. (See Evid. Code, § 210.) The trial court's finding that the department did not engage in bad faith practices during discovery is supported by substantial evidence; under standard appellate practice, we will not reweigh the evidence. (See *People* v. *Hill* (1984) 37 Cal.3d 491, 499 [209 Cal.Rptr. 323, 691 P.2d 989].) Finally, prejudice is a factual question to be determined by the trial court in the exercise of its discretion. (*Ibid.*; see Evid. Code, § 352.) Evidence of off-site molestations is probative on the issue of license revocation. The trial court did not abuse its discretion by admitting this evidence.

## IV. RIGHT TO MARRY

 Finally, Adamson challenges the revocation of the license as improperly based on her marriage to Harry Adamson, a suspected child molester. She contends that the revocation violated her constitutional right to make marital decisions. The trial court found that the department suggested that Harry was the cause of Adamson's license problems, but never demanded that she divorce Harry as a condition of retaining the license. The court also found no evidence of the department's bad faith or improper motive and that no constitutional rights were invaded.

First, Adamson claims that, in fact, the department has a policy of denying or revoking licenses to persons married to child molesters. She contends that the evidence presented at trial established a prima facie case, shifting the burden of proof to the department—a burden that Adamson contends that the department did not meet. However, the trial court found that no such policy existed. We are bound by this factual finding, as it is supported by substantial evidence. (See *People* v. *Hill, supra,* 37 Cal.3d at p. 499.)

Even if we were to assume that such a policy existed, Adamson's claim would fail. Preliminarily, she contends that the strict scrutiny test applies to analyze this claim because the rights involved are fundamental. However, there is no fundamental right to pursue an occupation that has an intimate relationship to the public interest. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18 [112 Cal.Rptr. 786, 520 P.2d 10]; *Lopez* v. *McMahon, supra,* 205 Cal.App.3d at p. 1516, fn. 3.) The business of operating a child care center is obviously one that is strongly related to the public interest and well within the Legislature's province to promulgate and regulate licensing requirements of child care centers' operators. (*Lopez, supra,* at p. 1516, fn. 3; see *Reece* v. *Alcoholic Bev. etc. Appeals Bd.* (1976) 64 Cal.App.3d 675, 681 [134 Cal.Rptr. 698].) Therefore, the rational basis test

is the appropriate standard to apply in evaluating former section 1596.885. (*Lopez, supra,* at p. 1516.)

The purpose of the challenged statute is a valid one—to protect the health, morals, welfare, or safety of children at child care centers. (Former § 1596.885, subd. (c) [Stats. 1984, ch. 1615, § 9, p. 5749].) The statute permits the department to revoke the license of one who engages in conduct that threatens the children's health, morals, welfare, or safety. Whether we regard that conduct as Harry's molestation or Adamson's tacit approval of it and her failure to recognize the threat that his behavior posed to the children under her care, the statute is rationally related to the legitimate state purpose of protecting these children. (See *Lopez v. McMahon, supra,* 205 Cal.App.3d at p. 1516.) The Legislature could reasonably conclude that the molester-spouse of a licensee would not be subject to the licensee's supervision or control. (*Lopez,* at p. 1520.)

Contrary to Adamson's argument, former section 1596.885 "does not directly intrude upon matters of family life and association. It does not purport to regulate or restrict who may live with whom. And it clearly does not preclude a husband and wife from cohabitating. [Citations.] The statutory restriction is imposed only on those seeking [to retain a child] care license." (*Lopez v. McMahon, supra,* 205 Cal.App.3d at p. 1521.) The legislation merely permits the department to revoke a license held by one who engages in conduct that threatens the children's health, morals, welfare, or safety. (See former § 1596.885, subd. (c).) "Any adverse effect of such [revocation] upon family life is incidental and unintended, and there is no impermissible intrusion on the constitutional right of privacy." (*Lopez,* at p. 1521.) Assuming arguendo that the department had a policy of revoking the licenses of persons married to child molesters, this practice would not violate the licensee's constitutional rights. (See *Lopez, supra,* at pp. 1515-1521.)

The judgment is affirmed.

Anderson, P. J., and Perley, J., concurred.

A petition for a rehearing was denied January 18, 1989, and appellants' petition for review by the Supreme Court was denied March 16, 1989. Mosk, J., was of the opinion that the petition should be granted.