Filed 10/14/14  P. v. Orozco CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B252434 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA123729) |
| v. | |
| DANIEL ENRIQUE RIVERA OROZCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, and Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Daniel Enrique Rivera Orozco was found guilty in counts 1, 2, and 4 of committing a lewd act upon a child (Pen. Code, § 288, subd. (a)).[1]  Brian D. was the victim in counts 1 and 2, and Daniel A. was the victim in count 4.  The jury found true the allegations that the crimes involved multiple victims (§ 667.61, subds. (a) and (b)), and that count 2 involved substantial sexual conduct (§ 1203.66, subd. (a)(8)).[2]

Defendant was sentenced to 45 years-to-life in prison, consisting of consecutive terms of 15 years-to-life for each of counts 1, 2, and 4.

Defendant argues the trial court erred in denying his motion to dismiss, which was made on the basis of unreasonable preindictment delay.  He further contends the trial court abused its discretion by excluding testimony beneficial to his case, and erred by failing to instruct on unanimity as to counts 1 and 2.

We affirm the judgment.

# FACTS[3]

## *Prosecution*

Defendant lived for 18 years with Blanca Flores,[4] the grandmother of Brian, Melissa, and Daniel.  During that time, the children and their mothers visited the house regularly.  Flores would sometimes leave the children in defendant's care.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

[2] Defendant was found not guilty as to count 3, committing a lewd act upon a child, Melissa B.

[3] We recount the facts as to Melissa only insofar as they are relevant to defendant's contentions.

2

**Brian (counts 1 and 2)**

Brian is the son of Flores's daughter, Carolina T. He was born in September 1997, and was 15 years old at the time of the trial. When Brian was a child, he and his mother lived in the front house of a duplex, while defendant and Flores lived in the back unit.

When Brian was about four or five years old, defendant would remove his clothing and watch pornography with Brian. On three or four occasions, defendant placed Brian's hand on his penis. Defendant also made Brian orally copulate him three or four separate times. Brian was unable to distinguish the individual incidents in which these acts occurred. He knew that on at least one occasion the touching took place in Flores's living room, and on another it took place in her bedroom.

In July 2002, when Brian was four years old, he and his mother were in bed watching TV. Brian got on top of his mother and tried to "hump" her in a manner that alarmed her. He told her what defendant had done to him. She immediately called the police. Brian spoke with an officer that night. He was interviewed again, also in July 2002, by Detective Rick Curiel. He told Detective Curiel what happened in the incidents with defendant.

Melissa is the daughter of Flores's daughter, Blanca M. Melissa was born in July 1997, and was 15 years old at the time of the trial. Melissa testified that defendant showed pornography to her and her cousins, Brian and Daniel, when she was about five years old. On one occasion, she saw defendant put his penis near Brian's mouth. She tried to tell her mother, but her mother would not listen.

Melissa remembered the incident as she grew up, but did not mention it to anyone until 2012, when her mother told her that Daniel had remembered things involving defendant. Her mother then took her to speak with the police. Later, Melissa talked

---

[4] Flores and her daughter share the same first name. For clarity, we refer to Flores by her last name, and to her daughter as Blanca.

about what happened with Brian and Daniel, but the three agreed not to bring it up again because they did not like talking about it.

**Daniel (count 4)**

Daniel is the son of Flores's daughter, D. A. He was born in April 1997, and was 16 years old at the time of the trial.

After attending a high school class discussing sexually transmitted diseases, Daniel noticed some white spots on his penis, which caused him to remember something defendant had done to him as a child. Daniel feared that defendant had given him a sexually transmitted disease.[5] He told his mother that defendant had done something to him when he was younger. She took him to the police station the next day. Daniel recounted to police that defendant touched him inappropriately when he was four or five years old. Daniel recalled that he and defendant were naked and that defendant had moved his penis around Daniel's anus and then ejaculated into a cup. Daniel did not understand what was happening and did not mention the incident to anyone because he did not know he was supposed to. The first time he talked to anyone about it was when he told his mother in 2012.

Daniel had "practically" forgotten about the incident until 2012, when the health class jogged his memory of it. He had not heard of anything happening between defendant and his cousins and had not spoken to them about it previously.

---

[5] A medical examination established that Daniel did not have a sexually transmitted disease.

*Defense*

**Investigations**

Detective Curiel testified that he interviewed Brian about the incidents with defendant in 2002. At one point, Brian said that defendant was in jail because defendant argued with Brian's mother.

Detective Gabriel Alpizar interviewed Brian, Melissa, and Daniel in February 2012. Detective Alpizar testified that Brian was sometimes inconsistent about the details of the incidents with defendant, and that Melissa did not remember a lot of details of the incident she witnessed. Daniel told Detective Alpizar that he did not see defendant's penis.

Dr. Bradley McAuliff testified as an expert on children's memory and suggestibility. Dr. McAuliff testified that children may take cues from an interviewer or other adult, which may cause them to remember things that did not happen. This is more common in cases where the child is young and the interviewer is a person with authority. Dr. McAuliff reviewed the transcripts of the interviews with Brian, Melissa, and Daniel, and opined that the interviewers may have suggested to the children that certain events happened, when in fact they did not occur.

*Rebuttal*

**Investigations**

Detective Curiel testified that in 2002, Brian told him the details of what happened in the incidents with defendant, which were consistent with the allegations at trial. They spoke about oral copulation using age-appropriate language. Detective Curiel believed that Brian understood the conversation. Detective Curiel did not interview Melissa or Daniel in 2002.

5

Detective Alpizar testified that in 2012, Brian was consistent about the details of the sexual abuse he described, and was inconsistent only as to minor details, such as in which room the incidents took place. Daniel told Detective Alpizar that he saw defendant's penis before he put it in Daniel's anus, but not during the act itself.

## DISCUSSION

*Pre-Filing Delay*

No charges were filed against defendant in 2002 following Brian's initial complaint of molestation. Defendant was charged in 2012 after Melissa and Daniel came forward as victims. At that time, corroborating evidence came to light in connection with the sexual abuse of Brian, as Melissa claimed to have witnessed one of the incidents. Defendant's trial took place when the victims were all between 15 and 16 years old.

Defendant moved prior to trial to dismiss the case on the grounds that the delay in prosecution violated his due process rights under the state and federal constitutions.[6] In his motion, defendant argued that the memories of the victims, who were young at the time of the charged offenses, would have diminished or been tainted some 10 years later, making his case difficult to defend.

At the hearing on the motion to dismiss, the trial court noted that defendant had not alleged any actual prejudice in his motion. Defense counsel argued that there was "kind of" a reference to it, and that the prosecution had agreed not to object to oral notice. Defense counsel argued prejudice was shown because the children were young at the time of the alleged incidents, they were subject to degradation of memory and adult influence over the years, and that there were no adult witnesses. He asserted that Brian's statements in 2002 differed in detail from his statements in 2012, and that the other

---

[6] Defendant also asserted his right to a speedy trial under the Sixth Amendment in the motion, but does not raise the issue here.

6

children had been investigated in 2002, and no abuse was indicated.[7]   The trial court denied the motion due to "an inadequate showing of actual prejudice," but afforded the prosecution the opportunity to respond.  The prosecutor responded that there was no substantial change in what Brian initially disclosed in 2002 and his statements in 2012. The only change was that the two additional victims had come forward.  The court reminded the parties that it did not yet know the facts of the case, and asked defense counsel if Brian's statements in 2002 differed from his statements in 2012.  Defense counsel stated that in 2002 Brian had mentioned that defendant was in trouble because he yelled at Brian's mother, but that in 2012, he did not include this detail and his testimony seemed more "streamlined."  The prosecution responded that in 2002 Brian informed his mother that defendant had placed his penis in Brian's mouth and made him touch defendant's penis, and in 2012, Brian alleged the exact same acts had occurred.  The court reiterated its denial of the motion, stating, "I don't find . . . any specific prejudice in this case other than generically and speculatively because the years have gone by, and the cases . . . say . . . that is not . . . prejudice . . . with [this] particular-type motion."

"The due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the California Constitution protect a defendant from the prejudicial effects of lengthy, unjustified delay between the commission of a crime and the defendant's arrest and charging." (*People v. Cowan* (2010) 50 Cal.4th 401, 430 (*Cowan*).)  A defendant who complains only of delay between the crimes and his arrest "is 'not without recourse if the delay is unjustified and prejudicial.  "[T]he right of due process protects a criminal defendant's interest in fair adjudication by preventing unjustified delays that weaken the defense through the dimming of memories, the death or disappearance of witnesses, and the loss or destruction of material physical evidence." [Citation.]  Accordingly, "[d]elay in prosecution that occurs before the accused is arrested or the complaint is filed may

---

[7] The record does not support defense counsel's assertion that Melissa and Daniel were interviewed in the 2002 investigation.  Detective Curiel testified that he did not interview either child.

7

constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions." [Citation.]'" (*Ibid*.) Federal due process protects a defendant from preaccusation and pretrial delays that cause "actual prejudice in presenting his defense" where the Government's delay in bringing the indictment was "a deliberate device to gain an advantage over him." (*U.S. v. Gouveia* (1984) 467 U.S. 180, 192, citing *U.S. v. Lovasco* (1977) 431 U.S. 783, 789-790; *U.S. v. Marion* (1971) 404 U.S. 307, 324.)

We review a trial court's ruling on a motion to dismiss for prejudicial prearrest delay for an abuse of discretion. (*Cowan*, *supra*, 50 Cal.4th at p. 431.) In ruling on a motion to dismiss for prejudicial prearrest delay, the trial court employs a three-part test. "'"A defendant [must first] . . . demonstrate prejudice arising from the delay. The prosecution may offer justification for the delay, and the court . . . balances the harm to the defendant against the justification for the delay." [Citation.]' [Citation.] [¶] Prejudice may be shown by '"loss of material witnesses due to lapse of time [citation] or loss of evidence because of fading memory attributable to the delay." [Citation.]' [Citations.]" (*Cowan*, *supra*, at p. 430.) "'Even a minimal showing of prejudice may require dismissal if the proffered justification for delay be unsubstantial.'" (*People v. Hartman* (1985) 170 Cal.App.3d 572, 582-583.) "Prejudice is a factual question to be determined by the trial court" and we defer to any underlying factual findings if supported by substantial evidence. (*People v. Hill* (1984) 37 Cal.3d 491, 499 (*Hill*), citing *People v. Cave* (1978) 81 Cal.App.3d 957, 965; see *Cowan*, *supra*, 50 Cal.4th at p. 431; see also *Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, 945.) If the defendant fails to meet the burden of showing prejudice, there is no need to determine whether the delay was justified. (*Serna v. Superior Court* (1985) 40 Cal.3d. 239, 249.)

Defendant relies on *Hill*, *supra*, 37 Cal.3d 491, in which the delay was held to be prejudicial. In *Hill*, the defendant's primary defense was mistaken identification. Prejudice in *Hill* was established because the victims were no longer able to positively identify the defendant. The *Hill* court noted that if the witnesses' memories had been clearer, they might have been able to exonerate the defendant. Instead, their limited recall made adequate cross-examination impossible. (*Id*. at p. 498.)

8

The type of prejudice established in *Hill* is not present in this case. The victims were familiar with defendant from regular contact with him, and were unfaltering in their identification of him. Moreover, the salient details of the incidents Brian described did not change between 2002 and 2012. Brian consistently stated that defendant made him orally copulate defendant and touch defendant's penis. Additionally, the evidence shows that neither Melissa nor Daniel had been interviewed in 2002, and their silence cannot be taken as a statement that defendant did not sexually abuse them, as defendant urges. The legislature has acknowledged that it is not uncommon for children to delay reporting sexual abuse, in section 288, subdivision (a), which permits prosecution of lewd acts upon children up until the victim has attained the age of 28. The ruling of the trial court is consistent with that legislative determination, and more importantly, is amply supported by the record, which undermines defendant's speculative assertion that the children's memories might have deteriorated or been influenced.

## *Exclusion of Testimony*

Defendant requested to introduce testimony at trial that Blanca, Melissa's mother, told the children to lie, for the purpose of showing the effect the statement had on the children. Defendant sought to introduce this evidence through the testimony of his brother-in-law, Egidio Cahuex. Cahuex told defense investigators that when he was visiting defendant in county jail, Flores told him that Blanca had told the children to lie about what happened.[8] Defense counsel stated that he intended to call Blanca to the stand to ask her whether she made the statement. Assuming Blanca denied telling the children to lie, he planned to call Flores to impeach Blanca. Defense investigators had asked Flores whether Blanca made the statement, but she said she did not recall "anything like that." Defense counsel assumed that Flores would testify that she did not

---

[8] Defense counsel also subpoenaed Blanca's husband, Lorenzo, who he believed to have overheard Blanca telling the children to lie, but Lorenzo could not be located prior to trial.

remember Blanca making the statement, or recall having a conversation with Cahuex about it. He would then call Cahuex to testify as to Flores's statement to impeach her.

The trial court asked defense counsel multiple times if he had evidence that Flores was present when Blanca purportedly told the children to lie:

"The Court: Was she present? Was Blanca Flores present when [her daughter] Blanca [] made this statement to the children?

"[Defense Counsel]: I'm assuming, but I don't know for sure. I'll tell you why.

"The Court: Was she present? As an offer of proof, was [] Flores present when [her daughter] Blanca [] made this statement?

"[Defense Counsel]: That's what I believe, the answer is yes.

"The Court: So --

"[Defense Counsel]: It's ambiguous . . . .

Ultimately, defense counsel admitted, "So the bottom line is that there's ambiguity as to how much was in the presence of Blanca Flores. As an officer of the court, that's the best offer of proof I have." He verified that he had not obtained a statement from any witness indicating that Flores was present when Blanca allegedly spoke to the children. The prosecution objected to admission of Cahuex's testimony for lack of foundation.

The court ruled: "So no, it's completely speculative . . . and what's more, I am disinclined unless Flores, unless Blanca Flores, says I was physically present and I heard my daughter say 'A,' 'B,' and 'C.'

"Unless that's her testimony, that whole body of testimony is gonna be excluded under 352. It's hearsay. There is no hearsay exception, and it's more confusing, and it is not gonna help the jury at all with any kind of relevant admissible testimony."

Defense counsel offered to bring Cahuex, who was waiting outside, into the courtroom: "We can have him testify at the 402 hearing right now. It could clarify maybe but --"

The court responded, "You're speculating based on what Cahuex has told you . . . . There's no basis for that, otherwise."

10

Defense counsel concluded, "It's all I have right now. As an officer of the court, that's all I have. I'm trying to do my best."

The court reiterated that the testimony would be excluded because: "It's highly speculative. It's hearsay. It's not admissible, okay."

Defendant argues that exclusion of the evidence violated his constitutional rights to confront witnesses and to due process. He asserts that Blanca's statement urging the children to lie is not hearsay because it would be admitted for the purpose of showing the effect of the statement on the children, and not for the truth of the matter asserted. Flores's and Cahuex's statements, although hearsay, could be properly admitted for impeachment purposes, as evidence of a prior inconsistent statements. We do not agree that the trial court erred, because there was no foundational showing that Flores heard Blanca tell the children to lie. Moreover, the proposed testimony was certainly subject to exclusion under Evidence Code section 352, one of the theories mentioned by the court as a legal basis for exclusion.

We review the trial court's order excluding evidence for abuse of discretion. "'[T]he court's ruling will be upset only if there is a clear showing of an abuse of discretion.' [Citation.] '"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.]' [Citation.]" (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431.) If the exclusion of evidence is proper on any theory of law applicable to the case, the exclusion must be affirmed regardless of the basis for the trial court's ruling. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [a correct ruling given for the wrong reason will not be disturbed on appeal].)

It is well settled that an out-of-court statement may be admitted over a hearsay objection "if a nonhearsay purpose for admitting the statement is identified, and the nonhearsay purpose is relevant to an issue in dispute. [Citations.]" (*People v. Turner* (1994) 8 Cal.4th 137, 189, overruled on other grounds in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5; *People v. Scalzi* (1981) 126 Cal.App.3d 901, 906-907 (*Scalzi*).)

11

"'[O]ne important category of nonhearsay evidence – evidence of a declarant's statement that is offered to prove that the statement imparted certain information to the hearer and that the hearer, believing such information to be true, acted in conformity with that belief. The statement is not hearsay, since it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth of the matter asserted in the statement.' [Citation.]" (*Scalzi*, *supra*, at p. 907.)

However, the mere assertion of a nonhearsay purpose does not end the analysis. "[T]he testimony of a witness concerning a particular matter is inadmissible unless he [or she] has personal knowledge of the matter. Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter." (Evid. Code, § 702, subd. (a).) "'In a hearsay situation, the declarant is, of course, a witness, and [is not exempted from] . . . the requirement of firsthand knowledge.' [Citations.]" (*People v. Valencia* (2006) 146 Cal.App.4th 92, 103.) "The rationale for requiring a hearsay declarant to have personal knowledge when the declarant's statement is admitted for its truth is identical to the rationale for requiring a witness to have personal knowledge of the subject matter of the witness's testimony. In the absence of personal knowledge, a witness's testimony or a declarant's statement is no better than rank hearsay or, even worse, pure speculation. The admission of a hearsay statement not based on personal knowledge puts the factfinder in the position of determining the truth of a statement without knowledge of its source and without any means of evaluating the reliability of the source of the information . . . . [T]he personal knowledge requirement applicable to witnesses is equally applicable to hearsay declarants." (*Id.* at pp. 103-104.)

The prosecutor objected to admission of Cahuex's testimony for lack of foundation, and, despite valiant efforts, defense counsel was unable to make an offer of proof that Flores was present when Blanca purportedly spoke to the children. As described by the trial court, it may have been the case that Flores was simply "musing about the nature of the case." The trial court did not abuse its discretion in excluding the evidence as mere speculation that was not based on Flores's personal knowledge.

We are not persuaded otherwise by defendant's arguments that the trial court erroneously ignored a request he made for a hearing under Evidence Code section 402. Defendant did not expressly request an Evidence Code section 402 hearing. In the hearing he stated only, "We can have him testify at the [Evidence Code section] 402 hearing right now. It could clarify maybe but --" When the court responded, "You're speculating based on what Cahuex has told you . . . . There's no basis for that . . . ." Counsel did not further pursue the matter, stating only, "It's all I have right now. As an officer of the court, that's all I have. I'm trying to do my best." Cahuex was present and waiting just outside the courtroom. If defense counsel believed Cahuex would state that Flores told him she was present when Blanca made her statement, he could have confirmed his belief with Cahuex, pressed for a hearing, and made a definitive offer of proof. Instead, he declined to pursue the matter, and essentially admitted that Cahuex's testimony would not establish that there was a proper foundation for Flores's statement to him.

The trial court also mentioned Evidence Code section 352 as a basis for exclusion of the proposed testimony. Given the highly convoluted nature of the proposed evidence, and the multiple levels of statements leading to the ultimate statement in dispute, the court could reasonably conclude the probative value of Blanca's purported statement to the children was substantially outweighed the probability that proof would "necessitate undue consumption of time" and create undue prejudice by confusing the issues or misleading the jury. (Evid. Code, § 352.)

***Failure to Give Unanimity Instruction***

Defendant contends that the trial court committed reversible error by failing to sua sponte instruct the jury on unanimity with respect to counts 1 and 2, relating to Brian. In count 1, defendant was charged with committing a violation of section 288, subdivision (a), between the dates of July 1, 2001, and July 19, 2002. In count 2, defendant was charged with committing another violation of section 288, subdivision (a), between the

13

dates of September 21, 2001, and September 20, 2003. In closing argument, the prosecution made clear to the jury that count 1 charged oral copulation and count 2 charged the touching of Brian's hand to defendant's penis.

Defendant argues that this distinction was insufficient to excuse the omission of a unanimity instruction, because Brian testified that both acts occurred multiple times, giving the jury separate factual bases to convict in each count. Specifically, defendant argues that, as to count 1, the jury may have convicted defendant based on the act witnessed by Melissa, or upon one of the other incidents alleged. As to count 2, some jurors may have convicted defendant based on an act in the bedroom, whereas others may have convicted him based on an act in the living room. These arguments lack merit, as there was no meaningful distinction between the acts that Brian described that would form a reasonable basis for the jury to distinguish between them, and indeed, defendant offered identical defenses to all acts alleged.

Under both the state and federal constitutions, a jury verdict in a criminal case must be unanimous. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) In addition, the jury must unanimously agree that the defendant is guilty of a specific crime. (*Ibid*.) Therefore, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid*.) In the absence of an election, a unanimity instruction is required in order "'to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.]" (*Ibid*.) Where the instruction is warranted, the trial court must give the instruction sua sponte. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) We review independently whether failure to give a unanimity instruction was error. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568.)

"'[W]hen there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if

14

the jury unanimously agrees the defendant committed all the acts described by the victim.' [Citation.]" *People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1589 (*Arevalo-Iraheta*).)

The facts and manner in which the case was prosecuted indicate that the prosecutor's intent was for the jury to agree that all of the acts testified to occurred, as the acts themselves were indistinguishable. That being the case, the trial court erred in failing to instruct the jury that it could convict if it unanimously agreed that any one or all of the acts occurred in each count. (*Arevalo-Iraheta*, *supra*, 193 Cal.App.4th at p. 1589.) Having concluded that the trial court erred, we consider whether defendant was prejudiced by the error.

"There is a split of authority on the proper standard for reviewing prejudice when the trial court fails to give a unanimity instruction." (*People v. Vargas* (2001) 91 Cal.App.4th 506, 561 (*Vargas*).) Some appellate cases hold that the failure to instruct on unanimity is of constitutional dimension and apply the test enunciated in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), requiring reversal unless the error is harmless beyond a reasonable doubt. (See, e.g., *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536.) Other cases apply the test from *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*), and hold that a conviction will be overturned only if "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Vargas*, *supra*, at p. 562, citing *Watson, supra,* at p. 836.)

Here, we need not decide which standard applies, because the error is harmless under either standard. In this case, there was no meaningful basis for distinguishing amongst the three or four incidents of oral copulation (count 1) or the three or four incidents of sexual touching (count 2), so defendant cannot have suffered prejudice. As to count 1, it is irrelevant whether the jury believed Melissa's testimony that she witnessed defendant placing his penis close to Brian's mouth. Melissa's observation was not tied to a specific incident, and thus would have been deemed credible or not credible as to all incidents. As to count 2, the single detail of whether a specific incident occurred

15

in the living room or the bedroom is irrelevant.  Brian testified that he was sexually molested by defendant in each of the rooms on at least one occasion.  His memories of which room the acts took place in were not attached to specific incidences of sexual touching, and would not influence a jury's decision as to Brian's credibility or lack thereof.  Regardless of which room the specific acts took place in, Brian and defendant were in Flores's house without other adults present.  Brian was a young child in the care of defendant, who had a position of authority over him.  There is nothing about being in one of the rooms rather than the other that would render the incident more or less believable.  To convict on either count, a reasonable jury necessarily would have to find that defendant committed all the acts in question.  There is simply no possibility that the verdict would have been different if the jury had been instructed on unanimity.  Defendant's contention fails.

## DISPOSITION

The judgment is affirmed.


KRIEGLER, J.


We concur:



MOSK, Acting P. J.                    GOODMAN, J.[*]

_____

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.