[No. B016540. Second Dist., Div. Two. Mar. 14, 1986.]

LAURIE SHLEFFAR, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Marilynn Van Dam and Victor Salerno, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**ROTH, P. J.**—Pursuant to the direction of the California Supreme Court, we issued an alternative writ in this matter to consider whether the superior

court erred in denying defendant's motion to dismiss which claimed that defendant's right to a speedy trial had been violated.[1] After thoroughly reviewing the record, we conclude that the trial court properly denied the motion. Therefore, we deny defendant's request for relief.

I

Defendant is presently charged with one count of grand theft (Pen. Code, § 487, subd. 1).[2] Essentially, it is alleged that she stole and cashed several checks made out to her employer.

At the preliminary hearing, the People presented two witnesses. The first, Wanda Couch, was a representative from R and J Industries, defendant's former employer. She testified that part of defendant's responsibilities as a receptionist was to open incoming mail. That mail often included checks made out to R and J Industries which were sent to it as payment for goods. Additionally, defendant had access to a rubber stamp which was to be applied to incoming orders. However, defendant was *not* authorized to cash or deposit any of the checks received by her employer. Several checks, made out to R and J Industries and with a total face amount in excess of $3,000 were cashed at the One Stop Liquor Store without any authorization from the payee. All checks bore on their back the R and J Industries rubber stamp endorsement to which defendant had access.

The prosecution's second witness was In Hui Lyu, the owner of the One Stop Liquor Store. She knew defendant because defendant had cashed some of her payroll checks at the store. Mrs. Lyu testified that on several different occasions, defendant came into her store, presented her with one of the subject checks made out to R and J Industries and asked to cash it based on the representation that she (defendant) was the company bookkeeper and the company needed the cash. Mrs. Lyu further testified that although she would ask defendant to sign her name to the checks, defendant would, at most, only write her initials, L.S., on the checks. On the back of one check, Mrs. Lyu wrote defendant's name. Mrs. Lyu was certain that defendant was the only employee of R and J Industries for whom she (Mrs. Lyu) cashed checks made out to the business itself. Lastly, Mrs. Lyu testified that defendant was sometimes accompanied by her boyfriend, Frank. She remembered this because she (Mrs. Lyu) had written on the back of one of the

---

[1]After we initially summarily denied the instant petition, defendant filed a petition for review in the California Supreme Court. That court granted review, stayed the pending felony trial, and retransferred the cause to this court with directions to issue an alternative writ.

[2]The People had initially also included one forgery charge (Pen. Code, § 470) but the magistrate dismissed that allegation at the conclusion of the preliminary hearing.

checks "Christian Brothers—Girlfriend" to indicate that defendant was accompanied by and was the girlfriend of a man who Mrs. Lyu recognized as often purchasing Christian Brothers Brandy at her store.

Defendant presented no affirmative defense at the preliminary hearing. As noted earlier, the magistrate held her to answer on one count of grand theft.

## II

Pertinent to defendant's substantive contention that her right to a speedy trial has been violated is the following abbreviated chronology.

The stolen checks were cashed from August 1981 to December 1981. R and J Industries first became aware of the theft in February 1982 when some of its customers informed it that they had never received goods for which they had sent payment. The matter was soon reported to the Los Angeles Police Department which commenced investigation. A felony complaint was filed on June 30, 1982. However, for reasons to be amplified, defendant was not arrested until September 14, 1984. This delay between the filing of the complaint and defendant's apprehension forms a key portion of defendant's argument.

The preliminary hearing was conducted in December 1984 and very soon thereafter defendant was arraigned in superior court. Defendant then waited until six months later, June 1985, to file her motion to dismiss. An evidentiary hearing was conducted and on August 12, 1985, the superior court denied her motion and set the matter for trial. Defendant filed her writ petition on September 30, 1985, thereby initiating the instant appellate litigation.

The essential thrust of defendant's claim is that the 27-month hiatus between the filing of the felony complaint and her arrest has prejudiced her ability to defend against the charge and that the People have failed to offer sufficient justification for the delay in arresting her.

## III

At the evidentiary hearing held on the motion to dismiss, the following was established.

### A.

### *Defendant's Ability to Prepare a Defense*

This verified petition now asserts: "In light of [defendant's] statement to Detective Bressell in March, 1982, that she only cashed payroll checks at

the liquor store, it is clear that her only viable defense rests on a showing that someone else from R & J took certain checks and cashed them."

In support of her contention that the two-year delay in arresting her had prejudiced her ability to mount a defense to the pending charge, defendant primarily pointed to her purported inability to locate Frank Luke, the man who had often accompanied her to the One Stop Liquor Store when she cashed checks.[3] In this regard, the totality of defendant's testimony was that she had not seen him since the latter portion of 1983 and that following her arrest in September 1984, she ". . . went to the lumber yard where he was employed and he was laid off and they didn't have any further information where he was. [¶] [She also] went back to the neighborhood where [she] knew his friends were and they said that they hadn't seen him." On cross-examination, defendant, who was represented by the public defender, conceded that she had never furnished that office's investigators with either any information about Frank Luke or the names and addresses of his friends or former employer.

Additionally, defendant claimed that she has lost her paycheck stubs from R and J Industries.

Lastly, defendant urged that because of the passage of time, the memories of the two witnesses the People had presented at the preliminary hearing had dimmed. In particular, defendant pointed to Wanda Couch's unpursued testimony that she could not remember if anyone other than she and defendant had opened the incoming mail although she thought that a Joyce Ford "might also" have done that task. Defendant also cited Mrs. Lyu's testimony that another individual whose identity she could not recall, but who was employed by R and J Industries, also cashed payroll checks at her store.

## B.

### The Investigation and Arrest of Defendant

After R and J Industries reported the theft, the case was assigned for investigation to Detective Brassell. He was told that defendant had been terminated when she failed to report for work on January 4, 1982. Additionally, he learned that in February 1982 defendant had phoned her former

---

[3]Frank Luke is apparently the Frank whom Mrs. Lyu stated purchased Christian Brothers Brandy at her store and sometimes accompanied defendant when defendant cashed the stolen checks.

employer and admitted taking one check, and when told that additional checks were missing, had responded, "Oh."[4]

On March 12, 1982, Detective Brassell sent defendant a postcard asking that she contact him in regard to the case. The card was addressed to 7613 Milton Ave., Whittier, California, an address apparently furnished by defendant's employer. A week later, defendant telephoned the detective and denied knowledge of any of the checks, claimed that she had only cashed payroll checks at the liquor store, and asked if it were necessary for her to obtain an attorney.

On June 7, 1982, Detective Brassell sent defendant another card at the same address asking her to phone him. The card stated: "This Department has a Criminal Matter under Investigation Concerning the Stolen/Forgery of seven (7) checks. Please Contact Investigator Prior to this case being presented to the District Attorney." On June 8, 1982, another card asking defendant to call was sent. That card stated: "Important Re: Bunco-Forgery Case G-1024 Poss Arrest Warrant to Be Obtained." Defendant failed to respond to either of these communications.

Detective Brassell's efforts during this period to obtain information from the Department of Motor Vehicles (DMV) about defendant's address were inconclusive. Using defendant's name, he was given an address in Hacienda Heights[5] but using the license plate number of defendant's car, he was told that no address was available as a registration application was then in process.

In July 1982, the detective sent a letter to the post office in Whittier asking whether defendant had ever filed a form indicating a change of address from Milton Ave. The post office responded that defendant had left as her forwarding address "General Delivery, Whittier, California."

In January 1983, another DMV check was run which apparently disclosed no new information. Nothing further happened until a Detective Buettner was given the case in June 1984 following Detective Brassell's reassignment to another division. Buettner contacted the DMV and learned that defendant's car was registered to defendant at 11307 Henshaw Blvd., Whittier. However, defendant's DMV identification card, issued in June 1982, still listed her address as 7613 Milton Ave., Whittier. Through following up this

---

[4]This information is contained in the police reports which defense counsel and the prosecution stipulated the superior court could receive and review in ruling upon the motion to dismiss. During testimony, defendant confirmed that she had spoken with the police in February 1982.

[5]Defendant testified this was an address at which her mother had lived until 1979.

information, Detective Buettner, in September 1984, found defendant at her new place of employment and arrested her.

Significantly, defendant's testimony helped to explain the often contradictory information the police received about her whereabouts in that she conceded that she often had not kept the DMV apprised of her current address.[6]

## C.

### The Superior Court's Ruling

After taking all of the afore-recited evidence and hearing argument from counsel, the trial court ruled that defendant had failed to establish prejudice and that in any event, law enforcement had made a reasonable effort to locate her. As such, it denied the motion to dismiss and this petition followed.[7]

---

[6]Defendant also testified that from June 1982 to January 1984, she was "openly" receiving welfare benefits. "If her point is that the 'open' receipt of welfare benefits alerted the police to her whereabouts then the answer is . . . that these are confidential records protected from scrutiny (Welf. & Inst. Code, § 10850) and that the police were under no duty to violate a law protective of privacy in order to facilitate her arrest." (*People* v. *Bernavidez* (1979) 92 Cal.App.3d 264, 268 [154 Cal.Rptr. 552].)

[7]The trial court ruled as follows: "The motion to dismiss is denied.

"The court finds that there is an inadequate showing of prejudice. We've not had one witness—the court has not been referred to one witness who will testify—who will testify, provide exonerating testimony on behalf of the defendant. There is no reasonable possibility that any missing witness could testify to a matter which would result in the defendant's exoneration.

"There's no evidence that any checking account number could possibly lead to the exoneration of the defendant.

"Furthermore, the defendant was aware in 1982 that she was the subject of a criminal investigation. The allegations of prejudice that have been made in this matter are similar to the vague allegations of prejudice in the Sahagun case, 89 Cal.App.3d, 1, at page 23.

"Nonetheless, even if someone were to determine that there was some prejudice, the court is satisfied that there is more than an adequate justification for the delay.

"Since the court finds there's no prejudice, there is no need to weigh that against the justification for the delay.

"To begin with, there is no evidence that the delay was for the purpose of weakening the defense. There is no intention to be oppressive. There was no intent on the part of the prosecution or its agent, the Los Angeles Police Department, to delay these proceedings for their benefit.

"Furthermore, the delay was occasioned by Ms. Shleffar's status as a fugitive. She in essence was hiding. She hid behind multiple addresses, including a general delivery address in Whittier.

"She refused a number of offers to contact with police. Furthermore, it's important to note that she was never arrested at her home. She was arrested at work.

"And the court is satisfied that the reason that the delay occurred in this case was because there was a search for the defendant, and, of course, that is a proper justification for delay under the authority of the Jones case in 3 Cal.3d.

"As to that department of motor vehicle document, that simply wasn't found adequate in my opinion to lead the police to Ms. Shleffar. If that document indicates that a car is owned

## IV

Article I, section 15 of the California Constitution provides, in pertinent part: "The defendant in a criminal cause has the right to a speedy public trial . . ." ▮ The right attaches in a felony prosecution upon the filing of the complaint. (*People* v. *Hannon* (1977) 19 Cal.3d 588, 608 [138 Cal.Rptr. 885, 564 P.2d 1203].) ▮ When a defendant complains that this right has been violated because of an unreasonable delay between the filing of the complaint and his/her subsequent arrest, the defendant must first establish prejudice as a result thereof. If defendant makes an adequate showing in that regard, the burden shifts to the People to justify the delay after which the court must balance the harm to defendant against the reasons for the delay in deciding whether dismissal of the prosecution is warranted. (*Serna* v. *Superior Court* (1985) 40 Cal.3d 239, 248-250 [219 Cal.Rptr. 420, 707 P.2d 793] and cases cited therein, mod.)

▮ As the threshold question of whether a defendant has established prejudice occasioned by the delay is clearly a factual matter to be resolved by the trial court, its decision on that point will not be overturned by an appellate court if supported by substantial evidence. (*People* v. *Hill* (1984) 37 Cal.3d 491, 499 [209 Cal.Rptr. 323, 691 P.2d 989].) ▮ In this regard, we cannot say the trial court erred.

To begin, defendant never presented to the trial court, either by way of declaration, testimony, or in-camera hearing, a specific theory of defense. In particular, no offer of proof was tendered as to the purported exculpatory evidence that Frank Luke would give were he available.[8] Clearly, defendant knows whether she ever negotiated the subject checks and if so, under what circumstances. If her defense is that she cashed only her payroll checks at the liquor store and that Mrs. Lyu must have mistaken her for the true culprit, it does not seem unreasonable to us that defendant be required to

---

by a person who is not licensed to drive at an address which was different from her California identification card. The law enforcement conduct in this case constituted reasonable efforts to locate a fugitive hiding behind multiple addresses, listings, including a general delivery address in Whittier.

"For me to conclude that the officers would have been able to find her requires that I speculate, and I believe that is inappropriate under the facts of this case for this court or any court to engage in speculation of whether Ms. Shleffar could have been found.

"Therefore, in terms of the justification, the weighing processes mandated, the court finds there is no denial of due process. Furthermore, the court finds that at no time was she incarcerated between June 30, 1982 and the date of her arrest, September 4, [*sic*] 1984, and therefore, the federal speedy trial right is not implicated."

[8]Any possibility that such a presentation might violate defendant's privilege against self-incrimination can be obviated through the conducting of an in-camera hearing. (See *People* v. *Galante* (1983) 143 Cal.App.3d 709, 711 [192 Cal.Rptr. 184] and *People* v. *Faxel* (1979) 91 Cal.App.3d 327, 330-331, fn. 1 [154 Cal.Rptr. 132]; but compare *People* v. *Sahagun* (1979) 89 Cal.App.3d 1, 24-26 [152 Cal.Rptr. 233].)

so allege in the trial court (see *People* v. *Galante, supra,* 143 Cal.App.3d 709, 711-712).

■ The purpose of the constitutional speedy trial provision is to insure timely prosecutions and to prevent unjustified delays from inhibiting the sound presentation of a defense. But unless a defendant can demonstrate specific prejudice flowing from the delay, the draconian remedy of dismissal should not be invoked merely because the accused was not arrested as quickly as would be possible in the best of all worlds. It is only because a delay can infect the truth finding process by preventing the accused from mounting a viable defense that a dismissal is ever justified.

Thus, speculation about prejudice because potential witnesses' memories have failed or because witnesses and evidence are now unavailable is insufficient to discharge defendant's burden. (See *Serna* v. *Superior Court, supra,* 40 Cal.3d at p. 250.) A particular factual context must be established in which a specific claim of prejudice can be evaluated. ■ This defendant has failed to do.

■ Defendant's claim in regard to Frank Luke as a missing witness was insufficient as she never asserted that he personally saw her negotiate any checks at the liquor store or that he had any pertinent knowledge of those events. And her testimony about her attempts to find him was patently inadequate as lacking the identities of individuals questioned, the names of business establishments visited, and specific dates, time, and places of the inquiries. Unsupported conclusionary assertions predicated upon hearsay statements of unidentified third parties are insufficient to establish unavailability. (See *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 910 [200 Cal.Rptr. 479]; *Blake* v. *Superior Court* (1980) 108 Cal.App.3d 214, 251 [166 Cal.Rptr. 470].)

■ The loss of defendant's paycheck stubs from R and J Industries[9] is of no moment as the documents lacked relevancy. Defendant claimed she needed them to establish the last time she worked for R and J Industries and thus presumptively had access to the stolen checks. But all of the checks introduced at the preliminary hearing were dated and negotiated within the time period defendant testified she had worked there. And the information only charges defendant with having committed the crime between August 3, 1981, and January 1, 1982.

Moreover, contrary to defendant's claim, the memories of witnesses have not dimmed in any significant manner. Wanda Couch gave the complete

[9]Defendant never alleged an inability to obtain those records from R and J Industries but during argument defense counsel stated the firm had gone into bankruptcy.

name of a person, Joyce Ford, who in addition to defendant, may have opened the incoming mail. As defendant has never demonstrated any interest or inability in finding Ms. Ford, her allegation that she is prejudiced by Couch's inability to recollect the identities of others possibly so situated rings hollow.

In a similar vein, no harm flows from Mrs. Lyu's inability to remember the names of other R and J Industries employees for whom she cashed *payroll* checks. Not only has defendant failed to even pursue other possible avenues to learn the names of such individuals, but Mrs. Lyu was very certain that defendant was the only individual who cashed checks made out to R and J Industries itself. Mrs. Lyu's unequivocal identification of defendant, corroborated by the physical evidence of Mrs. Lyu's notations on the checks, was apparently so strong that defense counsel did not even seek to cross-examine on that point.[10]

In sum, defendant failed to establish by any competent evidence, as opposed to speculation, surmise or conjecture, that her ability to prepare a defense has been prejudiced. The memories of the Peoples' witnesses were not uncertain on the dispositive points of the prosecution's case, to wit, defendant's access to the stolen checks and the rubber stamp endorsement which was applied to them and defendant's negotiating of the stolen checks accompanied by her false representation that she was the bookkeeper for R and J Industries. Thus, the case at bench is distinguishable from *People* v. *Hill, supra,* 37 Cal.3d 491 in which the California Supreme Court upheld the superior court's dismissal of a prosecution because the testimony of the People's witnesses had become uncertain or unequivocal on the key issue of identification. ▮ ▮▮▮, ▮ As defendant's right to a fair trial has not been impaired, the superior court correctly denied her motion.[11]

---

[10]At oral argument, defendant placed great emphasis on Mrs. Lyu's inability to remember the exact dates the five checks were negotiated. Not only is the back of each check stamped with the date of various banking transactions so that the date of cashing is fairly ascertainable, but the precise day each check was passed is not relevant to the presently raised defense that defendant did not cash these particular instruments but only negotiated her paychecks.

[11]Additionally, defendant has tendered the subsidiary contention that there was an unreasonable delay in the filing of the complaint. This claim implicates the right of due process but does not involve a constitutional speedy trial issue (*People* v. *Allen* (1979) 96 Cal.App.3d 268, 274 [158 Cal.Rptr. 470].) "But regardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay." (*Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 505 [149 Cal.Rptr. 597, 585 P.2d 219]; footnote omitted.) We do not see the three-month period between the reporting of the offense to the police in March 1982 and the filing of the complaint in June 1982 as unreasonable because during that period, Detective Bressell was investigating the matter and made several unsuccessful attempts to contact defendant at an address which she conceded she then lived. In any event, as we have concluded that defendant failed to discharge her burden of showing prejudice, this ancillary claim is without merit.

As we agree with the trial court that defendant failed to discharge her burden of showing prejudice, we need not determine whether the delay in arresting her was justified. However, in view of the limited resources of law enforcement, the existence of cases more aggravated or serious than defendant's, and defendant's constant use of multiple addresses, the police effort to locate defendant appears reasonable to us.[12]

## V

The alternative writ, having served its purpose, is discharged; the petition for a peremptory writ is denied. Pending finality of this opinion, the underlying trial remains stayed pursuant to the California Supreme Court's orders.

Beach, J., and Gates, J., concurred.

A petition for a rehearing was denied April 9, 1986, and petitioner's application for review by the Supreme Court was denied June 26, 1986. Bird, C. J., was of the opinion that the application should be granted.

---

[12]In this regard, we find pertinent the following remarks from *Kaikas* v. *Superior Court* (1971) 18 Cal.App.3d 86, 90 [95 Cal.Rptr. 596]. "While from the panoramic vantage point of hindsight it can be argued that more effort or different means might have been employed by the police to apprehend [defendant], one is not compelled to conclude that what was done was unreasonable. In the total picture we must recognize that the duties and functions of a police officer are so varied and numerous as to require the constant exercise of discretion in the setting of priorities in his day-to-day work. Emergencies and other unexpected immediate demands upon his time can easily cause interruption of scheduled or planned activities of what might be called routine investigation.

"It is perhaps an unfortunate, but nonetheless existing, fact of life in a democratic society that only so much time, manpower and money can be expended toward any single criminal case. Thus, we agree with the previously quoted principle [from *Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 738 [91 Cal.Rptr. 578, 478 P.2d 10]] that only in the case of 'willful oppression' or 'neglect' is the delay unreasonable. [Defendant] does not suggest that the delay was willful; and we hold that under the facts and circumstances here the delay was not unreasonable."