Filed 9/24/15  P. v. Ritter CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STEVEN RITTER,<br><br>Defendant and Respondent. | F068511<br><br>(Super. Ct. No. MF10785A)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

No appearance for Defendant and Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Heather S. Gimle, Deputy Attorneys General, for Plaintiff and Appellant.

-ooOoo-

---

\*      Before Kane, Acting P.J., Franson, J. and Smith, J.

The People appeal from an order dismissing a criminal case (Kern Superior Court case No. MF10785A) filed against respondent Steven Ritter because of a delay in prosecuting him. We reverse the order dismissing the case.

**FACTS**

In October 2012, Ritter was an inmate at the California Correctional Institute at Tehachapi. On the night of October 10, 2012, an anonymous note that stated there were weapons in the dayroom area was found in Housing Unit 3. The note also stated that the author overheard two inmates talking about attacking an officer and that they had weapons. The note identified the two inmates as a "[B]lack [man] named Kill" and a "Mexican [man] with [a] T on his face" and Correctional Officer Stewart as the officer who would be assaulted.

On October 11, 2012, at approximately 12:15 a.m., Correctional Officers Anthony Hudgens and Victor Quiet assisted in a search of a dayroom at the prison. In the lower portion of a portable steam food cart, Officer Hudgens found a state-issued razor that had been modified so that two razor blades stuck out of one end and its handle was wrapped with a white cotton material. Under a television in the room, Officer Quiet found a similar instrument consisting of a handle with two razor blades attached with string to one end.

On October 18, 2012, Correctional Sergeant Mike Worrell interviewed Ritter about the anonymous note that precipitated the search of the day room. Ritter was housed in Facility C and had access to the room where the weapons were found. Sergeant Worrell showed Ritter a copy of a letter that was written to Ritter's mother and he acknowledged writing it. Sergeant Worrell then put the anonymous note and the letter side by side and Ritter admitted writing the note. Ritter told Sergeant Worrell that he wrote the note in order to get Kill off the yard because Ritter owed him $300, and the Mexican man with the "T" on his face out of the building because nobody liked the man.

2

When asked about the weapons, Ritter admitted making them by breaking up the razors and tying the blades to the handles. Sergeant Worrell then ended the interview.

On Monday, October 22, 2012, Sergeant Worrell received confidential information that on Wednesday, October 10, 2012, Antonio Jeter, Ritter's cellmate, hid two inmate-manufactured weapons in the dayroom area of Housing Unit 3 in the locations where officers found them during the October 11, 2012 search.

On September 16, 2013, one day before Ritter was scheduled to be released, the prosecutor filed a complaint charging Ritter with one count each of possession of a weapon by an inmate (§ 4502, subd. (a)), manufacturing a weapon by an inmate (§ 4502, subd. (b)), and two prior prison term enhancements (§ 667.5, subd. (b)).

On September 27, 2013, a preliminary hearing was held in this matter.

On October 2, 2013, the prosecutor filed an information charging Ritter with manufacturing a weapon by an inmate and two prior prison term enhancements.

On October 18, 2013, Ritter filed a motion to dismiss alleging his right to due process was violated by the precharge delay in filing charges against him. In the moving papers, Ritter alleged that due to the delay he had to proceed with a related disciplinary hearing in which he was found guilty, lost 360 days of custody credits, and had to serve a 10-month term in the secured housing unit (SHU). Ritter also alleged that Jeter was released sometime after October 11, 2012, that Jeter was implicated by a confidential informant as being partially or wholly responsible for "the offense," and that the defense was not aware of Jeter's whereabouts, and had no way of locating him. Thus, according to Ritter, he was prejudiced because he lost a material witness, the ability to defend the case while already in custody, and the opportunity to reverse the outcome of the disciplinary hearing, which would have resulted in his immediate release.

On November 8, 2013, the prosecution filed a response to Ritter's motion to dismiss. According to the moving papers, Ritter had not shown that he was prejudiced because he had not explained through argument or declaration what steps he had taken to

3

procure Jeter's appearance.  Further, even assuming Jeter could not be located, Ritter failed to show prejudice because the only evidence connecting Jeter to the manufacturing offense was that he was seen placing unidentified items near where weapons, admittedly manufactured by Ritter, were found.

On November 25, 2013, the court heard the motion.  After the prosecutor acknowledged that she did not file the instant case against Ritter until September 16, 2013, the day before Ritter was to be released from custody, the court asked her for the justification for the delay.  The prosecutor then explained that her office did not get Ritter's case until November 2012, and that she did not actually get the case until mid-April 2013.  From April 2013 through September 2013, the case was reviewed and it was filed on September 16, 2013, the day before Ritter was paroled.  The court found that the precharge delay in filing charges denied Ritter his right to due process and granted the motion to dismiss.

## DISCUSSION

The People contend the court abused its discretion when it granted Ritter's motion to dismiss because Ritter failed to show that the delay prejudiced him.  We agree.

> "A defendant's state and federal constitutional speedy trial rights [citations] do not attach before the defendant is arrested or a charging document has been filed.  [Citation.]  Nonetheless, a defendant is not without recourse if a delay in filing charges is prejudicial and unjustified.  The statute of limitations is usually considered the primary guarantee against overly stale criminal charges [citation], but the right of due process provides additional protection, safeguarding a criminal defendant's interest in fair adjudication by preventing unjustified delays that weaken the defense through the dimming of memories, the death or disappearance of witnesses, and the loss or destruction of material physical evidence [citation].

> "A defendant seeking relief for undue delay in filing charges must first demonstrate resulting prejudice, such as by showing the loss of a material witness or other missing evidence, or fading memory caused by the lapse of time.  [Citation.]  Prejudice to a defendant from precharging delay is not presumed.  [Citations.]  In addition, although 'under California

4

law, negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process.... If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation.' [Citation.] If the defendant establishes prejudice, the prosecution may offer justification for the delay; the court considering a motion to dismiss then balances the harm to the defendant against the justification for the delay. [Citation.] But if the defendant fails to meet his or her burden of showing prejudice, there is no need to determine whether the delay was justified." (*People v. Abel* (2012) 53 Cal.4th 891, 908-909, fn. omitted (*Abel*).)

In the trial court, Ritter asserted he was prejudiced by the precharge delay because it resulted in the loss of a material witness (Jeter), the ability to defend himself while he was already unavoidably in custody, and the opportunity to reverse the outcome of his disciplinary hearing. However, "[i]t is only because a delay can infect the truth finding process by preventing the accused from mounting a viable defense that a dismissal is ever justified." (*Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, 946.) Thus, Ritter's inability to defend himself during a time when he was unavoidably in custody and to reverse the outcome of his disciplinary hearing were not proper grounds for the court to grant his motion to dismiss because they did not affect his ability to defend himself against the charge that he manufactured a weapon while he was an inmate.

Further, according to the confidential informant, he saw Jeter place the two modified razors in the dayroom. However, Ritter admitted manufacturing the razors and he did not explain how Jeter's placing the razors in the dayroom would assist in absolving him of the charged offense in light of this admission. Moreover, Ritter did not explain to the court why he was unable to locate Jeter, what efforts he made to locate him, or what role the precharge delay had in preventing him from contacting Jeter. Presumably Jeter was released on parole and Ritter's defense counsel should have been able to determine where Jeter lived through Jeter's parole officer. Thus, Ritter's claim in the trial court that he was prejudiced because the precharge delay caused him to lose a material witness is speculative. (*Abel, supra,* 53 Cal. 4th at pp. 909-910.) Accordingly,

5

we conclude that the court abused its discretion when it granted Ritter's motion to dismiss.

## **DISPOSITION**

The court order dismissing Kern Superior Court case No. MF10785A, is reversed.