Filed 11/9/15  P. v. Myers CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>KENNY RAY MYERS,<br><br>     Defendant and Appellant. | A137426<br><br>(Contra Costa County<br>Super. Ct. No. 05-111599-7) |

Defendant Kenny Ray Myers appeals from his conviction of committing a lewd and lascivious act on a child under the age of 14 (Pen. Code, § 288, subd. (a)).  He maintains his rights to due process and a speedy trial were violated by the 19-year delay between the filing of the complaint and his arraignment.  He also claims his attorney provided ineffective representation by failing to object to alleged misconduct committed by the prosecutor in his opening statement and the trial court erred in both admitting and excluding certain evidence.  Finally, he contends the cumulative effect of these alleged errors violated his due process rights.  We conclude none of defendant's claims have merit, and affirm the judgment.

**PROCEDURAL AND FACTUAL BACKGROUND**

In November 1992, the People filed a complaint against defendant alleging one count of committing a lewd and lascivious act on a child under the age of 14, K.H.  A warrant for defendant's arrest was issued the same day.

In August 2001, the trial court ordered the warrant would "remain out."

In August, 2011, 19 years after the complaint was filed, defendant was arrested in Nevada. Following a preliminary examination, the People filed an information in October, 2011 alleging the same count alleged in the complaint. Defendant filed a motion to dismiss based on his right to a speedy trial, which the court denied. At the end of the first trial, the court declared a mistrial after the jury deadlocked 11-1.

At the second trial, K.H., then 29 years old, testified that in the summer of 1992, defendant was her mother's boyfriend. K.H. was nine years old at the time. She and her mother, who died in 2007, had lived in an apartment in Concord, but her mother started staying at a hotel in Concord because defendant "didn't have a place [of his own]" and K.H. and her mother "only had [their] apartment." Her mother worked across the street from the hotel at a bank, and defendant worked at a movie theater. K.H. spent the night at the hotel about five to seven times, and the remainder of the time at her aunt and uncle's. She was never alone with defendant until the day of the offense.

Sometime in September of 1992, K.H.'s mother dropped her off after school at the hotel room and left to return to work. Defendant was there, and K.H. was "supposed to be there with him until [her] mom got off of work." Defendant was on the bed, wearing a towel, and they were watching television. K.H. made a comment about a Madonna video, and defendant asked if she was ticklish. She answered yes, and defendant said "I can show you a place that I know you'd probably be ticklish . . . ." K.H. said "Okay. Where?" Defendant came up behind K.H. and put his hands on her breasts, "on the nipple area." K.H. was "kind of frozen," because "there's a grownup doing something to me that I know they're not supposed to be doing." Defendant then said "he knew where else that [she] was ticklish, and he slid her pants down and touched her vagina. It felt to K.H. as though it lasted "as long as 15 minutes." Defendant next asked "if he could kiss [her] down there," and K.H. said "no." Defendant "got up and went around to the other side of the bed," and his towel fell off, exposing his penis. He picked up the towel and put it back on, and said "don't ever tell your mom because they'll put me in jail." K.H. "told him [she] wouldn't tell her, knowing [she] would tell her, but [she] knew [she] wasn't going to say it in front of [defendant]."

2

K.H.'s mother returned about 15 to 20 minutes later, and the two of them went to a Laundromat. After they put all the laundry in the washing machines, they sat down together. K.H. asked her mother "Do you remember when you said that if anybody touched me in a way they weren't supposed to that I was supposed to tell an adult?" Her mother asked "Why? What happened?" K.H. told her about the incident, and was crying because her mother started crying. Her mother was "very upset," and took K.H. to a friend's apartment.

Sometime in the following week, K.H. gave a statement to a Concord police officer, Detective Robin Heinemann. Officer Heinemann was still employed by the Concord Police Department at the time of the trial in 2012. She testified she interviewed K.H. at her school. K.H. stated defendant had picked her up from school and brought her back to the Heritage Hotel. Defendant "came out of the bedroom with a towel on, began asking her some questions about being ticklish, proceeded to tickle her. And then [he] said, 'Don't tell anyone but there's some ticklish bones on your body,' and then proceeded to remove her pants and underpants and rubbed and touched her vagina that was then exposed for approximately 20 minutes." K.H. also reported he "put his hand under her shirt and rubbed her or touched her breasts," and that the incident ended when he asked to kiss her vagina and she said no. Officer Heinemann attempted to locate defendant at the theater where he worked, but was unable to find him.

Officer Heinemann had no further involvement in the case for 19 years. In preparation for a hearing, she telephoned K.H. in October 2011 and asked her for a synopsis of the incident. K.H.'s synopsis was consistent with the initial report. Officer Heinemann then went through the report line by line, asking K.H. if the report was accurate, and found no inconsistencies.

Defendant testified he worked at the Capri Theater in 1992. He knew K.H.'s mother but had not seen her for about ten years prior to 1992, when she and her daughter came to the theater. They talked for a while, and K.H.'s mother offered to let him shower and sleep in her room at the hotel. The next day, she picked him up and brought him to the hotel room. She asked defendant to pick up K.H. from school by 4:00 p.m.

3

Defendant walked to K.H.'s school that afternoon and picked her up. They returned to the hotel room, where K.H. watched television. Her mother returned around 5:15 p.m., and they did not leave the hotel room that evening. K.H. slept on the floor, and defendant slept with her mother in the bed.

Defendant testified when he awoke the following morning, K.H. and her mother were gone. He spent the day in the hotel room again, and again picked up K.H. after school. They returned to the hotel room, where K.H. did homework and watched television on the floor. Defendant went into the bathroom to get ready for work that night. After he finished, he "went to sit on the bed, and as [he] passed [K.H.] [he] reached down and touched her on the back above the waist, around the kidney area, and [he] said, 'Gotcha'." K.H. "spun around and gave [him] an angry look and [he] could hear her growl." He testified he was "just being spontaneous," and that was the only time he touched K.H. that afternoon. They had no conversation after that touching incident.

When K.H.'s mother returned to the hotel, she and K.H. left a few minutes later to go to a Laundromat. K.H.'s mother returned alone to the hotel about an hour and a half later. Defendant testified "she woke [him] and said that [K.H.] had told her that she'd been touched inappropriately and she wanted me to tell her about it. And [he] said, 'Well, uh, I don't know much about it. Is she okay? And then she said, 'Well, she indicated that it was [defendant] that had touched her.' " Defendant responded " 'you know me better than that. That's not in me. I'd never do anything like that.' . . . 'You better talk to her, you know, and straighten this out, because I didn't—that's not me.' [N]othing like that could have happened." K.H.'s mother was upset and "slightly angry," and would not give him a ride to work as he had expected she would. He left the room and walked to work at the theater.

When defendant arrived at work that night, he was fired. His boss, James Huffman, told him "You know the rules," though defendant did not know what he had done wrong. He testified he knew "the rule was no alcohol on the premises" and that included not showing up for work intoxicated, but he had never done that.

4

Huffman testified as a rebuttal witness that about a month before he fired defendant, "his girlfriend came up to the theater screaming and yelling. . . ." Huffman "had to get her out of the lobby because it was packed. . . . [S]he was screaming and yelling . . . that [defendant] had did this to her daughter and all . . . she was just hysterical." Huffman had seen defendant's girlfriend before and knew she had a daughter. He estimated he knew about the relationship for about two months prior to the incident. Huffman fired him, after giving him a warning, because he had been drinking before arriving at work, though Huffman would not characterize it as "stone drunk."

Defendant testified he had been living in Nevada for the past 19 years, but there were times when he came back and forth from Nevada to California. K.H. testified she thought she saw defendant once during those 19 years when he came to a church where she volunteered serving food. Defendant testified it was him. He also admitted he had two prior convictions for indecent exposure, one in 1975 and one in 1985, but testified neither involved children.

A jury found defendant guilty as charged, and the court sentenced him to the midterm of six years.

## DISCUSSION

### Speedy Trial and Due Process Rights

Defendant contends the 19-year delay between the filing of the complaint and his arraignment violated his California constitutional speedy trial and due process rights.

Under the California Constitution (Cal. Const., art. I, § 15), a violation of the speedy trial guarantee may be premised " 'on delay occurring after the filing of the complaint and before the defendant was held to answer the charge in superior court.' [Citations.]" (*People v. DePriest* (2007) 42 Cal.4th 1, 27.) In contrast, "for federal constitutional purposes, attachment of the right to speedy trial occurs only upon ' "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." ' [Citation.]" (*Id*. at p. 26.) Thus, "[u]nlike its federal counterpart, the speedy trial guarantee under the state Constitution *is* triggered by the filing of a felony complaint." (*Id.* at p. 27.)

5

However, " 'when a defendant seeks dismissal based on delay after the filing of the complaint and before indictment or holding to answer on felony charges, a court must weigh "the prejudicial effect of the delay on defendant against any justification for the delay." [Citations.] No presumption of prejudice arises from delay after the filing of the complaint and before arrest or formal accusation by indictment or information [citation]; rather, the defendant seeking dismissal must affirmatively demonstrate prejudice [citation]. [Citation.]' " (*People v. DePriest*, *supra*, 42 Cal.4th at p. 27.)

A defendant is similarly required to demonstrate prejudice in connection with a state due process claim based on delay between the filing of a criminal complaint and arraignment. " '[R]egardless of whether defendant's claim is based on a due process analysis or a right to a speedy trial not defined by statute, the test is the same, i.e., any prejudice to the defendant resulting from the delay must be weighed against justification for the delay.' [Citation.] But we find nothing improper in this convergence when, as here, the two separate constitutional rights are protecting the same interest." (*People v. Martinez* (2000) 22 Cal.4th 750, 767.)

"[U]nlike other constitutional rights afforded the accused, deprivation of the right to a speedy trial 'may work to the accused's advantage,' as '[d]elay is not an uncommon defense tactic.' [Citation.] 'Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself." (*People v. Williams* (2013) 58 Cal.4th 197, 233.) The defendant has the burden of demonstrating prejudice, which may be shown by " ' "loss of material witnesses due to lapse of time [citation] or loss of evidence because of fading memory attributable to the delay." ' [Citation.]" (*People v. Cowan* (2010) 50 Cal.4th 401, 430.) "[S]peculation about prejudice because potential witnesses' memories have failed or because witnesses and evidence are now unavailable is insufficient to discharge defendant's burden." (*Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, 946 (*Shleffar*).) "The prejudice we must consider is the harm to defendant's ability to defend himself." (*People v. Conrad* (2006) 145 Cal.App.4th 1175, 1184.)

6

"We review for abuse of discretion a trial court's ruling on a motion to dismiss for prejudicial prearrest delay [citation], and defer to any underlying factual findings if substantial evidence supports them." (*People v. Cowan, supra,* 50 Cal.4th at p. 431.) "As the threshold question of whether a defendant has established prejudice occasioned by the delay is clearly a factual matter to be resolved by the trial court, its decision on that point will not be overturned by an appellate court if supported by substantial evidence." (*Shleffar, supra*, 178 Cal.App.3d at p. 945.)

Defendant's primary claim of prejudice here is based on the death of K.H.'s mother in 2007.[1] K.H.'s mother, Kathy, was not a witness to the molestation, but was the first person K.H. told. Defendant claims she was thus "a uniquely relevant witness" as the only person who could testify "to what [K.H.] told her, and what [K.H.'s] demeanor was." He also asserts "[o]nly Kathy could have testified whether she went to the theater to find [defendant], as . . . the theater manager testified."

However, Kathy was not the only person who could testify as to what K.H. told her or describe K.H.'s demeanor—K.H. testified to both. Moreover, Kathy and K.H. were interviewed by police within about a week of the incident. The police officer who interviewed mother and daughter was still with the force 19 years later, and testified at trial. Additionally, defendant himself testified regarding K.H.'s demeanor immediately after the incident, admitting K.H. "gave [him] an angry look and [he] could hear her growl," after what he described as a "spontaneous" touch to her back. Defendant also testified Kathy was upset and angry after confronting him, and she refused to give him a ride to his job at the theater the evening of the incident. And, defendant's supervisor at the theater testified Kathy came to the theater looking for defendant, "screaming and yelling . . . that [defendant] had did this to her daughter and all . . . she was just hysterical." It is pure speculation on defendant's part that the testimony of the victim's mother, if still alive, would have contradicted the testimony of K.H., or the officer, or his

---

[1] Defendant maintained in the trial court that "Officer Domko, who took the initial report, retired and was last known to be in Idaho." On appeal, he makes no claim of prejudice based on Officer Domko's absence.

supervisor, or assisted his defense in any way. (See *Shleffar*, *supra*, 178 Cal.App.3d 937.)

Defendant also claims his defense was prejudiced because he was unable to locate any witnesses who were employed by the hotel 19 years ago who could "dispute or corroborate [K.H.'s] testimony that she saw [him] numerous times at the hotel, and went swimming in the pool with him and her mother." K.H. testified she "came into contact" with defendant "maybe 10 or 15 times" that summer, which included encounters at both the hotel and the theatre. Defendant admitted he was with K.H. at the hotel on two different days, and he saw her once at the movie theater. Even if there was a hotel employee who either saw K.H. and defendant together at the hotel, or never saw them, defendant has not demonstrated how such a witness could have aided his defense.

Accordingly, defendant has not established any abuse of discretion by the trial court in refusing to dismiss the case.

### Evidence of Prior Crimes

Prior to trial, defendant sought to exclude evidence of his two prior convictions for indecent exposure. The prosecutor stated he was not seeking introduction under Evidence Code section 1108,[2] but intended to introduce the convictions only as impeachment evidence on credibility. The trial court ruled "if it's just for purposes of impeachment on credibility . . . I think probably it's appropriate, since it is that old, to exclude it, especially since the nature of the charge itself . . . is potentially quite prejudicial and therefore, risks that would be taken as character evidence . . . . So . . . my tentative thinking, anyway, is to exclude it. But, of course, if the defendant were to testify in some kind of way to put it in issue, all bets would be off."

---

[2] Evidence Code section 1108 provides, in part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).) The section defines "sexual offense" to include indecent exposure. (Evid. Code, § 1108, subd. (d)(1)(A); Pen. Code, § 314.) All further undesignated statutory references are to the Evidence Code.

At trial, defendant testified he told K.H.'s mother after she confronted him about the molestation that "you know me better than that. That's not in me. I'd never do anything like that. . . . Nothing like that could have happened." The prosecutor then sought to admit the evidence of the two priors as impeachment.

The trial court admitted the evidence, noting defendant "opened the door to what otherwise might be excluded under 352 as of marginal relevance . . . . I gave fair notice to the defendant . . . that depending on what he said it could open the door, and I think he has. So I'm going to allow [the prosecutor] to question with respect to that conduct." The court explained the evidence was "expressly admissible evidence under 1108, admissible for propensity as an exception to the usual 1101 rule, subject to 352 . . . . [O]nce the defendant put them in issue it's not simply for impeachment on the issue of credibility but for its tendency to undercut what he said about his character." Accordingly, the court denied defendant's request for an instruction limiting the jury's consideration of the priors to moral turpitude impeachment and not as propensity evidence.

Defendant maintains the court erred in admitting evidence of his two prior convictions, claiming they were not admissible either under section 1108 or for impeachment.

The Legislature "enacted section 1108 to expand the admissibility of disposition or propensity evidence in sex offense cases." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) " '[S]ection 1108 authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352.' [Citation.]" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1273.) In enacting section 1108, the Legislature determined that "evidence of uncharged sexual offenses is so uniquely probative in sex crimes

9

prosecutions [that] it is presumed admissible without regard to the limitations of . . . section 1101. [Citations.]" (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405.)**[3]**

"Evidence of previous criminal history inevitably has some prejudicial effect. But under section 1108, this circumstance alone is not reason to exclude it. '[S]ection 1108 affects the practical operation of [Evidence Code] section 352 balancing " 'because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence, evidence offered under [section] 1108 could not be excluded on the basis of [section] 352 unless 'the probability that its admission will . . . create substantial danger of undue prejudice' . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, *the presumption will be in favor of admission.*' " [Citation.]' " (*People v. Loy* (2011) 52 Cal.4th 46, 62.)

In considering whether to admit evidence of a prior sexual offense under section 1108, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less

---

**[3]** Defendant cites *People v. Earle* (2009) 172 Cal.App.4th 372, 399 (*Earle*) for the proposition a " 'propensity to commit one kind of sex act cannot be supposed, without further evidentiary foundation, to demonstrate a propensity to commit a different act.' " *Earle* considered cross-admissibility under section 1108 in deciding whether an indecent exposure charge was properly joined with a sexual assault charge. (*Earle*, at pp. 380–381.) Given the unrelated nature of the charges, the *Earle* court concluded only expert testimony could show a defendant's commission of indecent exposure showed a propensity to commit sexual assault. (*Id*. at pp. 397–398.) Although we question whether *Earle* was correctly decided, we need not make that determination because the instant case differs from *Earle*.

prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra,* 21 Cal.4th at p. 917.) "The court's ruling under section 1108 is subject to review for abuse of discretion" (*People v. Loy, supra,* 52 Cal.4th at p. 61), as is its ruling under section 352. (*People v. Lucas* (2014) 60 Cal.4th 153, 268 [disapproved on another ground in *People v. Romero* (2015) 62 Cal.4th 1, 53, fn. 19].)

The trial court initially excluded evidence of defendant's two prior indecent exposure convictions on the ground the acts were so remote in time their admission would be more prejudicial than probative. The court put defendant on notice, however, it would change its ruling and admit the evidence "if the defendant were to testify in some kind of way to put it in issue, all bets would be off." Defendant did just that, testifying regarding the molestation that he had said "I'd never do anything like that. . . . Nothing like that could have happened." The court then allowed evidence of the prior convictions.

Defendant now contends the prior acts of indecent exposure were not similar enough to the charged offense to be admissible under section 1108. Under section 1108, "there is no requirement that the charged and uncharged offenses be so similar that evidence of the prior acts would be admissible under section 1101. If such strict similarities were required, 'section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' [Citation.] Nevertheless, it follows that uncharged prior offenses that are very similar in nature to the charged crime logically will have more probative value in proving propensity to commit the charged offense." (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 966.) Thus, while similarity of the past offenses to the charged offense is one factor to be considered in conducting the section 352 analysis required under section 1108 (see *Falsetta*, *supra*, 21 Cal.4th at pp. 916–917), it is not a requirement for admission.

Moreover, defendant's claim that the acts of indecent exposure were not similar to the charged offense was belied by the evidence. K.H. testified that at the time of the

11

incident, defendant was wearing only a towel.  After he stopped touching her, he went to the other side of the bed and the towel "fell off."  Officer Heinemann testified the police report she took at the time indicated defendant " 'dropped his towel exposing his penis.' "  The prior incidents of indecent exposure were thus similar in some respects to the circumstances of the charged offense.

Additionally, the remaining *Falsetta* factors weighed in favor of admission.  Evidence of the prior convictions became highly relevant once defendant testified he would "never do anything like that."  There was a high "degree of certainty" the two prior acts occurred: the prosecutor made an offer of proof indicating he had records of the two prior convictions, and defendant testified to that effect.  (*Falsetta*, *supra*, 21 Cal.4th at pp. 916–917.)  The court allowed impeachment only with the fact of the two prior convictions, and did not admit "inflammatory details surrounding the offense[s]."  (*Ibid.*)  Finally, while evidence of defendant's inclination to commit other sex crimes was damaging to his defense, it was not unduly prejudicial.  " ' "Undue prejudice" refers not to evidence that proves guilt, but to evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis . . . .' "  (*People v. Hollie, supra,* 180 Cal.App.4th at pp. 1276–1277.)

Defendant also claims it was error to admit evidence of the two priors as impeachment.  Two kinds of impeachment are implicated here: general "moral turpitude" impeachment and impeachment with facts contrary to defendant's testimony.

A prior conviction of indecent exposure may be admissible as general moral turpitude impeachment.  (*People v. Ballard* (1993) 13 Cal.App.4th 687, 696–698.)  "A person who intentionally and lewdly affronts strangers and members of the general public, with unwelcome and offensive sexual displays of his genitals, is a person of 'moral depravity' and ' "bad character" ' with a ' "readiness to do evil." ' "  (*Id*. at p. 696.)  " ' " '[A] witness's moral depravity of any kind has some "tendency in reason" . . . to shake one's confidence in his honesty.' " ' "  (*People v. Robinson* (2011) 199 Cal.App.4th 707, 716.)

Evidence of prior convictions may also be admissible as impeachment with facts contrary to defendant's testimony. "[I]f past criminal conduct amounting to a misdemeanor has some logical bearing upon the veracity of a witness in a criminal proceeding, that conduct is admissible . . . ." (*People v. Wheeler* (1992) 4 Cal.4th 284, 294–295 [superseded by statute on another ground as stated in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1459–1460]; see Simons, Cal. Evidence Manual (2015) § 3:46, p. 268.) *People v. Cooks* (1983) 141 Cal.App.3d 224, is illustrative. In that case, one of the defendants testified he never possessed a gun. The court allowed impeachment of his credibility with evidence of a prior misdemeanor conviction for gun possession. The Court of Appeal affirmed, holding "the reference to the prior conviction was not asserted as a specific instance of conduct 'tending to prove a trait of his character' . . . such as dishonesty, but was offered and properly admitted to contradict his prior statement that he never possessed a gun." (*Id.* at p. 324.)

Defendant asserts the prior convictions do not contradict his testimony that he would "never do anything like that" because his statement referred only to a sexual crime against a child, not sex crimes in general. The court concluded otherwise: "[t]he clear implication of that to this jury is that he's not a guy that would ever commit a sexual offense." We agree that a reasonable interpretation of the meaning of "*anything* like that" certainly included *any* sex crime. Indeed, allowing defendant's testimony that he would "never do anything like that" to go unimpeached by his prior indecent exposure convictions would have permitted defendant to affirmatively mislead the jury. Thus, evidence of the prior incidents of indecent exposure was relevant to attack defendant's credibility by proving facts inconsistent with his testimony that he would "never do anything like that."

In sum, defendant has failed to show any abuse of discretion by the trial court in admitting into evidence the prior convictions under section 1108 and as impeachment.

***Exclusion of Evidence of a Prior Molestation of K.H.***

Defendant maintains the trial court also abused its discretion in excluding evidence K.H. had been molested before. He urges the evidence was relevant because it

involved "the exact same acts" and K.H.'s "familiarity with such acts at a young age." Thus, he concludes the evidence was relevant to "cast doubt upon the conclusion that [K.H.] must have learned of these acts through the defendant."

Generally, the defense may not ask a witness who claims to be the victim of sexual assault about his or her prior sexual activity. (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1513; Evid. Code, § 1103, subd. (c)(1).) Section 782, however, provides a limited exception—the statute is "designed to protect victims of molestation from 'embarrassing personal disclosures' unless the defense is able to show in advance that the victim's sexual conduct is relevant to the victim's credibility. [Citation.] If, after review, 'the court finds the evidence relevant and not inadmissible pursuant to Evidence Code section 352, it may make an order stating what evidence may be introduced and the nature of the questions permitted.' [Citation.] 'A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if appellant can show an abuse of discretion.' " (*People v. Bautista* (2008) 163 Cal.App.4th 762, 781–782.)

Defendant sought to introduce evidence of at least two prior incidents in which K.H. was molested as a child by a female relative "so that the jury will not conclude that any knowledge of sexual activity must have come from the alleged conduct of [defendant]." At the section 402 hearing,[4] K.H. testified that between the ages of six and eight, a female relative asked her to touch her breast and vaginal area. In a second incident, the same relative put her mouth on K.H.'s vagina. K.H. was not certain if there was a third incident.

The court found these prior incidents were "not particularly relevant to credibility on the theory that a nine-year-old would not know to be able to describe conduct like this in a setting where the conduct in the first incident is quite different than the conduct alleged here. For starters, the perpetrator in the first incident, or incidents, was a female, not a male. There are obvious differences in anatomy, but there's also differences in

---

**4** The prosecutor waived the requirement that the defendant bring a new motion under section 782, and the parties agreed the transcript of the prior section 402 hearing on the issue at the first trial could be considered by the court.

14

what a child might imagine would be normal and acceptable between a female and a male based on that prior experience. . . . [¶] There's also different conduct. There was no oral-genital contact in this case in the nature of the oral-genital contact that occurred in the earlier incident. And the touchings were different. [¶] And so I think it's only of marginal relevance. . . . [¶] And I think the relevance in the ability to explain and describe is also attenuated significantly by the fact that 20 years have passed and the victim is now an adult. So the experiences of an adult in the intervening years and the, presumably, more knowledgeable witness that will be here, relative to a child witness, makes that much more attenuated, the relevance. [¶] . . . [O]n the 352 issue, I think that it—because it's of marginal relevance, it would be confusing, consumptive of time, and invite all kinds of speculation by the jury of what was the effect of prior experiences on a child witness. . . ." The court added "I will say, however, that [the prosecutor], based on my ruling, you cannot then argue that a child wouldn't make this up, or how could a child have imagined this, unless it's true. You can't say that."

Defendant maintains it was error to exclude the evidence, relying on *People v. Daggett* (1990) 225 Cal.App.3d 751 (*Daggett*.) *Daggett* explained "[a] child's testimony in a molestation case . . . can be given an aura of veracity by his [or her] accurate description of the acts. This is because knowledge of such acts may be unexpected in a child who had not been subjected to them. In such a case it is relevant for the defendant to show that the complaining witness had been subjected to similar acts by others in order to cast doubt upon the conclusion that the child must have learned of these acts through the defendant. Thus, if the acts involved in the prior molestation are similar to the acts of which the defendant stands accused, evidence of the prior molestation is relevant to the credibility of the complaining witness and should be admitted." (*Id*. at p. 757.)

The situation in *Daggett*, however, was entirely different than the situation here. In that case, the complaining witness had been charged in juvenile court with molesting two younger children. (*Daggett, supra*, 225 Cal.App.3d at p. 754.) After the charges were filed, he accused Daggett of orally copulating and sodomizing him. (*Ibid*.) There was evidence the complaining witness had told medical professionals he had been

15

sexually molested as a child. (*Ibid*.) The court held it was error, in Daggett's trial, to exclude evidence of the earlier molestation of the complaining witness without holding a hearing under section 782. (*Ibid*.) The court noted the error was compounded when "the prosecutor argued to the jurors that if they believed [the complaining witness] molested other children, he must have learned that behavior from defendant. This is the type of argument the excluded evidence was intended to refute." (*Id*. at p. 757.)

In this case, the evidence adduced at the hearing showed the earlier acts of sexual molestation of K.H. were dissimilar to the charged acts of defendant. The perpetrator in the earlier incidents was female, and the sexual acts alleged were different. Most notably, however, K.H. was not a child when she testified at trial; she was a 29-year-old woman. The trial court forbid the prosecutor from arguing "that a child wouldn't make this up, or how could a child have imagined this, unless it's true." Thus, there was no danger her testimony as an adult regarding the acts committed against her as a child would lead the jury to conclude her knowledge of the sexual acts could only have resulted from her encounter with defendant.

Accordingly, the trial court acted within its discretion in concluding evidence of the prior molestations was of extremely marginal relevance, while its admission would be "confusing, consumptive of time, and invite all kinds of speculation. . . ."

Finally, contrary to defendant's claim, "exclusion of the evidence of a victim's sexual history does not deny the defendant a fair trial. There is no fair trial problem with exclusion of all such evidence under Evidence Code section 1103. 'That limited exclusion no more deprives a defendant of a fair trial than do the rules of evidence barring hearsay, opinion evidence, and privileged communications.' [Citation.] Therefore, because the trial court may properly exclude all such evidence without violating a defendant's fair trial rights, there is no merit in the argument that not admitting some of the evidence under Evidence Code section 782 deprives the defendant of a fair trial." (*People v. Mestas, supra*, 217 Cal.App.4th at p. 1517.)

*Prosecutorial Misconduct and Ineffective Assistance of Counsel*

In his opening statement, the prosecutor stated: "And the defendant molested her. He stole her innocence in this hotel room." Defendant asserts this was misconduct, because it suggested K.H. "had no sexual experience," was "sexually naive, and could not have fabricated allegations of specific sexual contact." He also claims his trial counsel's failure to object constituted ineffective assistance of counsel.

Defendant maintains *People v. Varona* (1983) 143 Cal.App.3d 566 is controlling. In that sexual assault case, defendant unsuccessfully sought to introduce evidence the victim was a prostitute who, "in pursuit of her profession . . . walked the night streets, in th[e] area [where the crime allegedly occurred], to solicit customers." (*People v. Varona, supra,* 143 Cal.App.3d at pp. 569–570.) The defendant averred it was "misconduct for the prosecutor to argue that there was no proof that the woman was a prostitute when he had, by his objections, prevented the defense from proving that fact." (*Id*. at p. 569.) The court agreed, noting the prosecutor "not only argued the 'lack' of evidence where the defense was ready and willing to produce it, but he compounded that tactic by actually arguing that the woman was not a prostitute although he had seen the official records and knew that he was arguing a falsehood." (*Id*. at p. 570.)

In contrast, the prosecutor here did not argue a falsehood. He did not state K.H. had no sexual experience or had never been sexually molested before. Neither did he argue that K.H., as a child, could only have knowledge of certain sexual acts because of the molestation by defendant. "Prosecutors have wide latitude to discuss and draw inferences from the evidence at trial." (*People v. Lucas* (1995) 12 Cal.4th 415, 473.) The fact that K.H. had been molested before did not mean the nine-year-old had no innocence left to steal. The prosecutor's statement was a permissible inference from the evidence, not misconduct.

"To demonstrate ineffective assistance of counsel, a defendant must show two things: deficient representation and prejudice resulting from the deficient representation. The standard for prejudice is whether there is a reasonable probability the defendant would have obtained a better result absent the deficiency. [Citations.] If there is no

showing of prejudice, we need not examine counsel's performance. [Citation.]" (*People v. Mestas, supra,* 217 Cal.App.4th at p. 1518.) Because we have concluded the prosecutor did not commit misconduct, there can be no prejudice arising from defense counsel's failure to object. Moreover, the complained-of comment was very brief, and the jury was instructed the comments of counsel are not evidence. Thus, even if there was misconduct, it did not begin to amount to prejudicial misconduct.[5]

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.


We concur:


_____
Humes, P. J.


_____
Margulies, J.

---

[5] Defendant also asserts the cumulative effect of the claimed errors violated his due process rights. Because we have concluded the trial court did not err, we reject this claim.